CHARLES CURRAN, Respondent, *v.* LOUIS GALEN, as President
(Known Under the Title of Master Workman) of BREWERY
WORKINGMEN'S LOCAL ASSEMBLY, 1796, KNIGHTS OF LABOR,
JOSEPH GROSSBERGER and GEORGE WATTS, Appellants.

1. WORKINGMEN'S ASSOCIATIONS — LEGITIMATE PURPOSES. The
organization or co-operation of workingmen is not of itself against any
public policy, and must be regarded as having the sanction of law, when
it is for such legitimate purposes as that of obtaining an advance in the
rate of wages or compensation, or of maintaining such rate.

2. RESTRICTION OF INDIVIDUAL RIGHT OF LABOR — UNLAWFUL PUR-
POSE — PUBLIC POLICY. If the purpose of an organization or combina-
tion of workingmen is to hamper or restrict the freedom of the citizen in
pursuing his lawful trade or calling, and, through contracts or arrange-
ments with employers, to coerce other workingmen to become members of
the organization and to come under its rules and conditions, under the
penalty of the loss of their positions and of deprivation of employment,
such purpose is against public policy and unlawful.

3. CONTRACT WITH EMPLOYERS' ASSOCIATION. The fact that a contract
between a workingmen's organization and an employers' association was
entered into on the part of the employers with the object of avoiding dis-
putes and conflicts with the workingmen's organization, does not legalize
a plan of compelling workingmen, not in affiliation with the organization,
to join it, at the peril of being deprived of their employment.

*Curran* v. *Galen*, 77 Hun, 610, affirmed.

(Argued January 29, 1897; decided March 2, 1897.)

APPEAL from a judgment of the General Term of the
Supreme Court in the fifth judicial department, entered
April 14, 1894, which affirmed an interlocutory judgment in
favor of plaintiff entered upon a decision of the court at
Special Term sustaining a demurrer to the answer.

The plaintiff demands damages against the defendants for
having confederated and conspired together to injure him, by
taking away his means of earning a livelihood and prevent-
ing him from obtaining employment. He sets out in his com-
plaint that he was an engineer by trade, and that, previously to
the acts mentioned, he was earning, by reason of his trade, a

large income, and had constant employment at remunerative wages. He sets forth the existence of an unincorporated association in the city of Rochester, where he was a resident, called the Brewery Workingmen's Local Assembly, 1796, Knights of Labor; which was composed of workingmen employed in the brewing business in that city and was a branch of a national organization known as the Knights of Labor. He alleges that it assumed to control by its rules and regulations the acts of its members in relation to that trade and employment, and demands and obtains from its members implicit obedience in relation thereto.

Plaintiff then alleges in his complaint that the defendants Grossberger and Watts wrongfully and maliciously conspired and combined together, and with the said local assembly, for the purpose of injuring him and taking away his means of earning a livelihood, in the following manner, to wit: That in the month of November, 1890, Grossberger and Watts threatened the plaintiff that, unless he would join said local assembly, pay the initiation fee and subject himself to its rules and regulations, they and that association would obtain plaintiff's discharge from the employment in which he then was and would make it impossible for him to obtain any employment in the city of Rochester, or elsewhere, unless he became a member of said association. In pursuance of that conspiracy, upon plaintiff's refusing to become a member of said association, Grossberger and Watts and the association made complaint to the plaintiff's employers and forced them to discharge him from their employ, and, by false and malicious reports in regard to him, sought to bring him into ill-repute with members of his trade and employers and to prevent him from prosecuting his trade and earning a livelihood. The answer, in the first place, admitted all that was alleged in respect to the organization of the local assembly, as to how it was composed and as to its being a branch of the national organization of the Knights of Labor, and as to its assuming to control the acts of its members and to demand from them implicit obedience. It then denies, generally and specifically,

each and every other allegation in the complaint. As a second and separate answer and defense to the complaint, the defendants set up the existence in the city of Rochester of the Ale Brewers' Association and an agreement between that association and the local assembly described in the complaint, to the effect that all employés of the brewery companies belonging to the Ale Brewers' Association " shall be members of the Brewery Workingmen's Local Assembly, 1796, Knights of Labor, and that no employé should work for a longer period than four weeks without becoming a member." They alleged that the plaintiff was retained in the employment of the Miller Brewing Company " for more than four weeks after he was notified of the provisions of said agreement, requiring him to become a member of the local assembly ; " that defendants requested plaintiff to become a member and, upon his refusal to comply, " Grossberger and Watts, as members of said assembly, and as a committee duly appointed for that purpose, notified the officers of the Miller Brewing Company that plaintiff, after repeated requests, had refused for more than four weeks to become a member of said assembly," and that " defendants did so solely in pursuance of said agreement, and in accordance with the terms thereof, and without intent or purpose to injure plaintiff in any way." The plaintiff demurred to the matter set up as a separate defense to the complaint, upon the ground that it was insufficient, in law, upon the face thereof.. The Special Term and General Term have sustained the demurrer, and the question is whether this matter, set up by way of special defense, is sufficient to exonerate the defendants from the charge, made in the complaint, of a conspiracy to injure the plaintiff and to deprive him of the means of earning his livelihood.

*W. A. Sutherland* and *D. C. Feely* for appellants. If the plaintiff was under contract for a period which had not expired, and hence was discharged from employment in violation of his contract, his remedy was against his employer and not against the defendants. (*Vickers* v. *Wilcox*, 8 East, 1 ; *Mor-*

*ris* v. *Langdale,* 2 B. & B. 283 ; *Kendall* v. *Stone,* 5 N. Y.
14 ; *Beach* v. *Ranney,* 2 Hill, 309 ; *Butler* v. *Kent,* 19 Johns.
223 ; *Crain* v. *Petrie,* 6 Hill, 522 ; *Lowery* v. *W. U. T. Co.,*
60 N. Y. 198.) Assuming that the plaintiff was employed
from day to day so that the Miller Brewing Company could
discontinue his services without breach of contract, the second
defense is a good answer. (Penal Code, § 171a ; *B. M. Co.*
v. *N. W. L. Assn.,* 54 Minn. 223.)

*A. G. Warren* for respondent. A contract cannot be set
up as a defense to an action for damages resulting from the
carrying out of such contract, when the plaintiff in such
action is not a party to the contract. (Wright on Crim. Con
spiracy, 176 ; *Regina* v. *Rowland,* 17 Ad. & El. [N. S.] 671.)
An act which is in itself illegal cannot be legalized, not alone
as to the parties, but also as to others, by a contract to do the
thing which the law forbids. (*Shaw* v. *Wheeler,* 113 Mass.
179 ; Penal Code, § 171a.)

*Per Curiam.* In the decision of the question before us we
have to consider whether the agreement upon which the
defendants rely in defense of this action, and to justify their
part in the dismissal of the plaintiff from his employment,
was one which the law will regard with favor and uphold,
when compliance with its requirements is made a test of the
individual's right to be employed. If such an agreement is
lawful, then it must be conceded that the defendants are entitled
to set it up as a defense to the action ; forasmuch as they allege
that what they did was in accordance with its terms.

In the general consideration of the subject, it must be pre-
mised that the organization, or the co-operation, of working-
men is not against any public policy. Indeed, it must be
regarded as having the sanction of law, when it is for such
legitimate purposes as that of obtaining an advance in the rate
of wages or compensation, or of maintaining such rate.
(Penal Code, sec. 170.) It is proper and praiseworthy, and,
perhaps, falls within that general view of human society,

which perceives an underlying law that men should unite to achieve that which each by himself cannot achieve; or can achieve less readily. But the social principle which justifies such organizations is departed from, when they are so extended in their operation as either to intend, or to accomplish, injury to others. Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling, and if the purpose of an organization or combination of workingmen be to hamper, or to restrict, that freedom, and, through contracts or arrangements with employers, to coerce other workingmen to become members of the organization and to come under its rules and conditions, under the penalty of the loss of their position, and of deprivation of employment, then that purpose seems clearly unlawful and militates against the spirit of our government and the nature of our institutions. The effectuation of such a purpose would conflict with that principle of public policy which prohibits monopolies and exclusive privileges. It would tend to deprive the public of the services of men in useful employments and capacities. It would, to use the language of Mr. Justice BARRETT in *People ex rel. Gill* v. *Smith* (5 N. Y. Cr. Rep. at p. 513), " impoverish and crush a citizen for no reason connected in the slightest degree with the advancement of wages, or the maintenance of the rate."

Every citizen is deeply interested in the strict maintenance of the constitutional right freely to pursue a lawful avocation, under conditions equal as to all, and to enjoy the fruits of his labor, without the imposition of any conditions not required for the general welfare of the community. The candid mind should shrink from the results of the operation of the principle contended for here; for there would certainly be a compulsion, or a fettering, of the individual, glaringly at variance with that freedom in the pursuit of happiness, which is believed to be guaranteed to all by the provisions of the fundamental law of the state. The sympathies, or the fellow-feeling which, as a social principle, underlies the association of workingmen for their common benefit, are not consistent with a purpose to

oppress the individual who prefers by single effort to gain his livelihood. If organization of workingmen is in line with good government, it is because it is intended as a legitimate instrumentality to promote the common good of its members. If it militates against the general public interest, if its powers are directed towards the repression of individual freedom, upon what principle shall it be justified? In *Regina* v. *Rowlands* (17 Ad. & Ellis [N. S.], 671) the question involved was of the right by combination to prevent certain workingmen from working for their employers and, thereby, to compel the latter to make an alteration in the mode of conducting their business. The Court of Queen's Bench, upon a motion for a new trial for misdirection of the jury by Mr. Justice ERLE below, approved of his charge, and we quote from his remarks. He instructed the jury that " a combination for the purpose of injuring another is a combination of a different nature, directed personally against the party to be injured, and the law allowing them to combine for the purpose of obtaining a lawful benefit to themselves gives no sanction to combinations which have for their immediate purpose the hurt of another. The rights of workmen are conceded ; but the exercise of free will and freedom of action, within the limits of the law, is also secured equally to the masters. The intention of the law is, at present, to allow either of them to follow the dictates of their own will, with respect to their own actions, and their own property, and either, I believe, has a right to study to promote his own advantage, or to combine with others to promote their mutual advantage."

The organization of the local assembly in question by the workingmen in the breweries of the city of Rochester may have been perfectly lawful in its general purposes and methods and may, otherwise, wield its power and influence usefully and justly, for all that appears. It is not for us to say, nor do we intend to intimate, to the contrary ; but so far as a purpose appears from the defense set up to the complaint that no employé of a brewing company shall be allowed to work for a longer period than four weeks, without becoming a member

of the Workingmen's Local Assembly, and that a contract between the local assembly and the Ale Brewers' Association shall be availed of to compel the discharge of the independent employé, it is, in effect, a threat to keep persons from working at the particular trade and to procure their dismissal from employment. While it may be true, as argued, that the contract was entered into, on the part of the Ale Brewers' Association, with the object of avoiding disputes and conflicts with the workingmen's organization, that feature and such an intention cannot aid the defense, nor legalize a plan of compelling workingmen, not in affiliation with the organization, to join it, at the peril of being deprived of their employment and of the means of making a livelihood.

In our judgment, the defense pleaded was insufficient, in law, upon the face thereof, and, therefore, the demurrer thereto was properly sustained.

The judgment appealed from should be affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.