(99 App. Div. 481)

## JACOBS v. COHEN et al.

(Supreme Court, Appellate Division, Second Department. December 1, 1904.)

1. CONTRACT COMPELLING EMPLOYER TO EMPLOY UNION LABOR—VALIDITY.

A contract between an employer and a labor union providing that the employer shall not employ any help, other than those who are members of the union, and who conform to the rules of the union, and providing that the employer shall cease to employ employés who are not in good standing on being notified to that effect by the representatives of the union, and providing that the employer shall abide by the rules of the union, is an attempt to restrict the freedom of employment, and is void as against public policy.

Bartlett and Jenks, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by Meny Jacobs, as president of the Protective Coat Tailors' & Pressers' Union, Local 55, of the United Garment Works of America, against Morris Cohen and another, comprising the firm of M. Cohen & Son, and another. From an interlocutory judgment sustaining a demurrer to a separate defense in the answer, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

William Liebermann, for appellants.
Edward H. M. Roehr, for respondent.

HIRSCHBERG, P. J. The plaintiff sues, pursuant to the provisions of section 1919 of the Code of Civil Procedure, as president of the Protective Coat Tailors' & Pressers' Union, Local No. 55, of the United Garment Workers of America, an unincorporated association consisting of seven or more persons, organized in the borough of Brooklyn. The action is upon a promissory note made by the defendants Morris Cohen and Louis Cohen, comprising the firm of M. Cohen & Son, and indorsed by the defendant Samuel Nelson. The joint answer of the defendants denies the allegations of the complaint, excepting as to the making of the note; denies that any consideration was given for the note; and sets up a second separate and distinct defense, which has been held upon demurrer to be insufficient. In that defense it is alleged that the note was given as collateral security for the performance by said firm of

the covenants contained in a certain tripartite agreement, entered into by the firm, as party of the first part; all their employés, through a designated representative, as parties of the second part; and the local union of which the plaintiff is president, as party of the third part. It is further alleged that the firm has performed all the covenants of the agreement excepting one, the material part of which is set forth in detail, and which is alleged to be against public policy and unlawful. The entire contract is also annexed to the answer, and made a part of the defense in question.

The portion of the agreement referred to is as follows:

"That the party of the first part, shall not employ any help whatsoever other than those belonging to, and who are members of, the party of the third part, and in good standing, and who conform to the Rules and Regulations of the said party of the third part, and the said party of the first part shall cease to employ any one and all those employees who are not in good standing, and who do not conform to and comply with the Rules and Regulations of said party of the third part, upon being notified to that effect by its duly credentialed representatives. The party of the first part hereby agrees to abide by the Rules and Regulations of the party of the third part, as known in the trade, and to permit and allow representatives of said party of the third part to enter —— shop or shops at any and all hours of the day and night, for the purpose of inspection and enforcement of the terms of this contract, as well as all the Rules and Regulations herein referred to. That the party of the first part shall not engage any help whatsoever, even those who are members of the party of the third part, without their first having produced a pass card duly executed and signed by the authorized Business Agent of the party of the third part; said card to show that the bearer thereof is a member in good standing of the party of the third part, and that he has complied with the Rules and Regulations thereof in force at that time. In the event of the party of the first part removing —— shop or shops, —— must notify the party of the third part within three days after such removal, the place, where —— moved to."

Although the question may not be altogether free from doubt, I think the spirit and the reasoning of the unanimous decision of the Court of Appeals in the case of Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, necessarily condemns this contract as illegal. In that case the organization and co-operation of workingmen was fully recognized as having the sanction of the law when the purpose designed was to secure and maintain an advance in the rate of wages, but was declared to be against public policy and unlawful if the object sought was to hamper or restrict the freedom of the citizen in pursuing his lawful trade or calling, and, through contracts or arrangements with employers, to coerce other workingmen to become members of the organization, and to come under its rules and conditions, under penalty of a loss of position and deprivation of employment. It was also held that the fact that a contract between a workingmen's organization and an employer's association was entered into on the part of the employers with the object of avoiding disputes and conflicts with the workingmen's organization does not legalize a plan of compelling workingmen not in affiliation with the organization to join it, at the peril of being deprived of their employment and of the means of making a livelihood. The court said (page 37, 152 N. Y., page 298, 46 N. E.) that:

"The social principle which justifies such organizations is departed from when they are so extended in their operation as either to intend or to accomplish injury to others. Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling, and if the purpose of an organization or combination of workingmen be to hamper or to restrict that freedom, and, through contracts or arrangements with employers, to coerce other workingmen to become members of the organization, and to come under its rules and conditions, under the penalty of the loss of their position and of deprivation of employment, then that purpose seems clearly unlawful, and militates against the spirit of our government and the nature of our institutions. The effectuation of such a purpose would conflict with that principle of public policy which prohibits monopolies and exclusive privileges. It would tend to deprive the public of the services of men in useful employments and capacities. It would, to use the language of Mr. Justice Barrett in People ex rel. Gill v. Smith, 5 N. Y. Cr. Rep., at page 513, 'impoverish and crush a citizen for no reason connected in the slightest degree with the advancement of wages or the maintenance of the rate.'"

The learned counsel for the respondent contends, however, that the case of Curran v. Galen, supra, has been overruled by the decision in Nat. Protective Ass'n v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648. It is evident that it was not so understood by the majority of the court, for no allusion is made to the Galen Case in the main opinion in the Cumming Case by Chief Judge Parker, and Judge Gray, in his concurring memorandum, expressly states that the later case is not within the principle of the earlier one. Indeed, the real question involved in the Cumming Case was the freedom of the employer to discharge certain of his men, notwithstanding the fact that in doing so he would be yielding to the dictation of a labor union, or acting under the stress of a threatened strike. The decision rendered was to the effect that a labor union may refuse to permit its members to work with independent fellow servants or with those who are members of a rival organization, and that it may notify the employer to that effect, and that a strike will be ordered unless such servants are discharged, where its action is based upon a proper motive, such as a purpose to secure only the employment of efficient and approved workmen, or to secure an exclusive preference of employment to its members on their own terms and conditions, provided that no force is employed and no unlawful act is committed. And it was further held that if the employer, under the circumstances suggested, sees fit to discharge the employés who are objected to, neither they, nor the organization of which they may be members, have a right of action against the rival union or its members. The real issue in that case was as to the lawfulness of the methods employed to induce action on the part of the employer, and it was held by a divided court that the methods were within the bounds of law. But the action of the employer in discharging the objectionable men, whether taken under the influence of motives of policy, individual weakness, fear of inconvenience, pecuniary loss, or other like motive, so long as not occasioned by violence, intimidation, or coercive threats, is to be regarded in law as purely voluntary, and within his undoubted right as a free citizen. The case is obviously different from the one presented in Curran v. Galen, supra, where a contract was entered into which bound the employer.

to discharge his men for no other reason than a refusal on their part to join a particular union, specific performance of which agreement, if valid and enforceable in equity, could be compelled by the mandate of the courts. In one case the will of the employer was left free to yield to or resist the means employed to affect it; in the other it was subjected by executory contract to an alien and arbitrary domination, which not only deprived the employer of all freedom of action, but also tended to stifle the legitimate aspirations of all independent competition in the field of labor.

It is not contended that the agreement in the case at bar does not obligate the firm of M. Cohen & Son to discharge all of its employés who do not belong to the plaintiff's union, or who may at any time cease to belong to it or to remain therein in good standing, and also to refrain, during the life of the agreement, from employing any one other than such members. The object of the agreement is not to leave the firm free to act in the matter as it may feel inclined to do from time to time, but to compel it to keep out of its employ all other workingmen than members of this one union, and to discharge all who may at any time cease to be such members. Among the objects recited in the preliminary part of the agreement for its execution is the desire of the parties to work only with those who are affiliated with the union in question, and the further desire to be guided and regulated by its rules and regulations. By the terms of section 5 of the agreement, recited herein in full, the firm is not only prohibited from hiring others than members, but the additional restriction is created that even members may not be hired without the production of a card, signed by the authorized business agent of the union, testifying to their good standing. In view of these provisions, and the objects sought by the agreement, it is plain that the covenant on the part of the firm to "cease to employ any one and all those employés who are not in good standing, and who do not conform to and comply with the rules and regulations" of the union, upon being notified to that effect by its duly credentialed representative, is an engagement upon the part of the firm to discharge· such persons upon receiving the stipulated notice. The combination disclosed is accordingly one the purpose of which is to hamper and restrict freedom of employment on the part of both the master and the servant under penalty of both loss of service and deprivation of employment, and to coerce all workingmen within the field of its operation to become and to remain members of the contracting organization. Such a combination was distinctly declared to be unlawful in the Curran Case. It is true that in that case there were elements of falsehood and malice, but no special significance appears to have been attached to them; the underlying principle which controlled the court being the necessity of preserving in a free country the utmost liberty in the pursuit of lawful occupations, without the imposition of conditions not required for the promotion of the general welfare.

It follows from what has been said that the allegations of the second defense contained in the answer, if proven, will establish

the fact that the promissory note in suit was given to secure com-
pliance with an unlawful covenant. Its enforcement is therefore
contrary to public policy, and the allegations constitute a good de-
fense. The interlocutory judgment should accordingly be re-
versed, with costs, and the demurrer overruled, with costs.

WOODWARD and HOOKER, JJ., concur.

WILLARD BARTLETT, J. (dissenting). I am not prepared to
say that such a contract as is pleaded here in the second separate
defense is, on its face, and without any averment of malicious mo-
tive, one which the law condemns. I cannot see why a man may
not be permitted to enter into a restrictive agreement of this char-
acter, if his purpose in doing so is to secure the best service in the
performance of the work which he desires to have done, although
the effect of the agreement is in some respects detrimental to others
—as, for example, to those who are not admitted to his service
because they do not belong to an organization of workingmen
whom he deems best fitted to perform the labor which he desires
performed. If it were pleaded here that the sole purpose of this
contract was to injure other workingmen, or hamper their free-
dom in pursuing their lawful callings, or to coerce them to do an
act injurious to themselves, a different case would be presented;
but, in my opinion, a contract having the lawful purpose of benefit-
ing the parties thereto by procuring for the employer the most
capable workmen, and not involving the exercise of any physical
force or restraint or violence, is not invalidated because of the
possibility or probability that its operation may have a detri-
mental effect upon the interests of others.

JENKS, J., concurs.