NATIONAL FIREPROOFING CO. v. MASON BUILDERS' ASS'N OF CITY OF NEW YORK et al.

(Circuit Court, S. D. New York. April 4, 1906.)

CONTRACTS—LEGALITY—AGREEMENT BETWEEN EMPLOYERS AND TRADE UNIONS.

A trade agreement between a mason builders' association and bricklayers' union, by which the members of the association agree to include in their contracts for building all interior brick and mason work, such as the installation of fireproofing, etc., that they will not sublet such interior work, but will have it done by their own workmen, giving preference to those employed in the construction of the walls, so as to give them the easier and safer part of the work as well as the more exposed and dangerous, and enable them to more nearly make full time in bad weather, and which binds the members of the unions to work only for contractors who comply with such requirements, is not in itself unlawful, and when made in good faith, solely for the mutual benefit of the parties concerned, and not for the purpose of creating a monopoly or of preventing others from obtaining contracts and employing workmen on the same terms, is not in violation of any rights of one who desires to take separate contracts for fireproofing to be installed by his own men employed for that work alone.

In Equity. On motion for preliminary injunction.

James W. Osborne, for the motion.

F. A. Acer, Eidlitz & Horltz, Sidney J. Cowen, and Hillquit & Hillquit, opposed.

TOWNSEND, Circuit Judge. The facts herein, appearing from the complaint, answer, and affidavits, are as follows:

The complainant is a Pennsylvania corporation, extensively engaged in the manufacture and installation of tile fireproofing, and, since November, 1898, authorized to transact business in the city of New York, where it has installed its system of fireproofing in a number of large buildings. The defendants are members of the Mason Builders' Association of New York and of various bricklayers' unions. The defendant, the Mason Builders' Association, was organized in 1884. The objects of the association, inter alia, are to "adopt such measures for the better protection of employers and employés as shall lead to the promotion of harmony between all parties engaged with us in business; to arbitrate all differences, and so avoid the great evil of strikes," etc. This association, together with the representatives from the bricklayers' unions, has a joint arbitration board, before whom difficulties between the association and the bricklayers may be arbitrated, under a trade agreement between the representatives of the association and the various unions, and the effect of this agreement has been to practically dispose of all questions between the parties and to avert strikes. The said trade agreement contains the following clauses, of which complainant complains:

"(5) Members of the Mason Builders' Association must include in their contracts for a building all cutting of masonry, interior brickwork, the paving of brick floors, the installing of concrete blocks, the brick work of the dampproofing system and all fireproofing—floor arches, slabs, partitions, furring and roof blocks—and they shall not lump or sublet the installation, if the labor in connection therewith is bricklayers' work as recognized by the trade (the men employed upon the construction of the walls to be given the preference). [This clause is not objected to.] That all cutting of masonry be done by those best fitted for the work, and that the members of the Mason Builders' Association make the selection; but cutting of all brickwork, fireproofing, terra cotta, concrete arches and partitions, as well as the washing down and pointing up of front brickwork and terra cotta, shall be done by bricklayers. * * *

"(9) That any member of these unions, upon showing his card for membership, be permitted to go upon any job when seeking employment, unless notified by a sign, 'No Bricklayers Wanted'; and that employment be given exclusively to members of the unions that are parties to this agreement. The shop steward or business agent shall determine who are members of these unions. It shall not be the duty of the foreman to ask any man to what union he belongs. If the shop steward be discharged for inspecting the cards of the bricklayers on a job, or for calling the attention of the foreman to any violation of the agreement, he shall be at once reinstated until the matter is brought before the joint arbitration committee for settlement. The foreman must be a practical bricklayer.

"(10) No member of these bricklayers' unions shall work for any one not complying with all the rules and regulations herein agreed to. No laborer shall be allowed upon any wall or pier to temper or spread mortar, which shall be delivered in bulk; said mortar to be spread with a trowel by the bricklayers, who shall work by the hour only."

The fifth clause, against which complaint is particularly directed, was inserted in said agreement in 1893, at the request of the representatives of the bricklayers' unions, upon their contention that the fireproofing company were using special gangs of men for doing the work, and, thereby, making an unjust discrimination against them, in that the installation of the fireproofing blocks was strictly bricklayers' work, and that the men who had been at work upon the wall,

and who were exposed to the inclemencies of the weather, and the danger attached to said work, ought also to have an opportunity to do what was the easier and protected work of installing fireproof blocks, and upon the further contention that they should be allowed to do the inside work also, because it could be done almost continuously, and the men could make substantially full time, which they could not do when working upon the walls.

The complainant claims that the effect of this agreement is to ruin its business in the city of New York, so far as concerns the installation by it of its tile fireproofing, because, when it makes contracts to install its system, the bricklayers' unions have obliged the bricklayers employed by complainant to strike, and that therefore not only is the general contractor prohibited from contracting with complainant, but also an owner desiring to construct a building is precluded from contracting with it, as manufacturer, for the installation of its system of fireproofing in such building, and that this is contrary to law, because it deprives the complainant of its constitutional right and liberty to pursue its calling, and to do business in the city of New York, which is a right of property, and because, further, it is a conspiracy to prevent it, by threats and intimidations, from exercising its lawful trade in the use of its property, in violation of subdivision 5 of section 168 of the Penal Code of the city of New York, and because said agreement is in violation of public policy and the common law and statutes of New York, in creating a monopoly in the business of installing tile fireproofing, and in that it impairs the obligation of contracts, etc.

Defendants, in their affidavits, allege that the complainant has admitted that, if it were permitted to install its own material, it would be compelled to use a special gang of men, who were working for it continually; that the only way in which mason builders in the usual course of business can control the letting of contracts for the installation of fireproofing is to take the contract to do all the work of which the fireproofing is a part. They deny that the agreement was entered into with any desire to obtain the sole monopoly of said business, or to exclude the complainant from using its manufactured product, or to prevent it from being used in the city of New York, or to prevent complainant from making contracts for the installation of its system of fireproofing in buildings and structures. And, furthermore, they deny that they have prevented the complainant from getting such contracts by threats, intimidation, or otherwise, and deny that the agreement is directed against the complainant, asserting that the fifth clause therein was inserted years before the complainant was doing business in the city of New York.

In some of the affidavits of the defendant the situation is stated as follows:

"The defendant bricklayers have entered into an agreement with their employers, the mason builders, whereby the former will work for such employers, provided such employers contract with the persons employing them —that is, the owners of the buildings—to do all the brickwork; not to do simply the fireproofing, but all the brick masonry work necessary to be done in the erection of the building. The only brickwork that the complain-

ants are prepared to install, and have the facilities for installing, is the fireproofing. The installing of fireproofing in a building is but about 50 per cent. of the brick masonry necessary to be done. If the contracts in and about New York which the complainant enters into extended to all the brickwork of a building, undoubtedly the defendant bricklayers would be as willing to work for the fireproofing company as for the mason builders. This not being the case, the complainant should not ask the court to interfere with the contracts which the defendant bricklayers have entered into, or may hereafter deem wise to enter into, whereby said bricklayers secure the installation of all the brick masonry upon a building to be erected. It is to prevent the specialization of our trade that we have entered into article 5, which has been in operation since 1891. There are thousands of bricklayers at the present day working in New York City for independent contractors, namely, those not members of the Mason Builders' Association, but they observe the terms of article 5, though they have not signed it, and are not partners to it."

This case is one of great importance, the claims of the respective parties have been presented in a large number of affidavits, and the questions involved have been discussed in voluminous briefs. The agreement does not present the ordinary case of a combination of labor against employers and capital. It is a case of a combination of capital represented by the Mason Builders' Association and of labor represented by the Bricklayers' Union, which it is claimed injuriously affects the interests of capital represented by the complainant and other capitalists, and of labor represented by employés not members of the union or who have not signed the agreement.

If the contract is a conspiracy for the purpose and with the effect alleged by the complainant, and has been carried out by threats and intimidation, as stated in the affidavits, then a case is presented of an unlawful conspiracy to deprive the complainant of its liberty and property. If the purpose of the said agreement was to coerce those who were not parties to it, the case would be brought within the principles discussed in Curran v. Galen, 152 N. Y. 33, 37, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496. There the court held that, if the purpose of an organization was to coerce their workmen to become members of an organization under penalty of loss of position and deprivation of employment, it would be within the principle of public policy which prohibits monopolies and exclusive privileges.

The answer of defendants denies all the material allegations of the bill and affidavits, except the allegation as to the existence of this agreement. It is therefore different in this regard from Curran v. Galen, supra, where the facts were admitted by demurrer. If the allegations in the answer and the statements in the affidavits be true, the agreement resolves itself into one by which the builders merely agree that they will take contracts for mason work only where such contracts include the installation of the fireproofing, and that they will not sublet the same, but will use their own men for such installation, and whereby the bricklayers agree that they will work only for those who comply with this agreement.

It is claimed, for the reasons set forth in the affidavits and referred to above, that this agreement was entered into for the mutual advantage of the parties, in the line of the avoidance of strikes and

the opportunity for control by contractors of an entire contract, in permitting the bricklayers to do all the brickwork on a certain building, so that having done the outside work, exposed to the inclemencies of the weather, they might also do the inside and protected work and obtain full and better wages. If the facts be as contended by the defendants, there is nothing unlawful in this agreement. The rights of capital and labor are equally protected by the law in the making of such contracts as are for the best interests of the parties concerned, in the absence of proof of any act or motive other than that which is justified by the law. Indeed, it is difficult to see upon what theory the court could enjoin the defendants herein from carrying out said agreement. As is stated by Judge Gray in National Protective Association v. Cumming, 170 N. Y. 315, 335, 63 N. E. 369, 375, 58 L. R. A. 135, 88 Am. St. Rep. 648:

"Our laws recognize the absolute freedom of the individual to work for whom he chooses, with whom he chooses, and to make any contract upon the subject that he chooses. There is the same freedom to organize, in an association with others of his craft, to further their common interests as workingmen, with respect to their wages, to their hours of labor, or to matters affecting their health and safety. They are free to secure the furtherance of their common interests in every way, which is not within the prohibition of some statute, or which does not involve the commission of illegal acts. The struggle on the part of individuals to prefer themselves, and to prevent the work which they are fitted to do from being given to others, may be keen and may have unhappy results in individual cases; but the law is not concerned with such results, when not caused by illegal means or acts."

Furthermore, it is not clear, if these rules and regulations are reasonable, why complainant cannot comply with said rules and with said agreement and do the outside as well as the inside work. Its argument upon this point seems to be that it desires to be permitted to do a certain branch of a certain business in the way which is most profitable to it, by means of its own men and to the exclusion of others. It may readily be seen that, if this contention is sustained, any one supplying work and materials in the construction of a building might enjoin the carrying out of any agreement which excluded him from doing his particular part of the work in the same way, no matter how small or insignificant that work might be in the construction of the building. Such a situation would lead to needless confusion, and might further seriously interfere with the ability of the workmen to secure their wages from the various independent employers.

The very recent decision of the Court of Appeals, in Jacobs v. Cohen, 183 N. Y. 207, 76 N. E. 5, shows that the question of law depends upon whether there is coercion by threats and by the unlawful use of power and influence in keeping other persons from working at their trade, and procuring their dismissal from employment, as in Curran v. Galen, supra, or a lawful agreement made by an employer with his workmen, regulating the performance of the work and restricting the class of workmen to such persons as are in affiliation with the association of the employers' workmen, provided the restrictions were not oppressive.

In these circumstances, and because the questions presented depend

upon the existence or nonexistence of disputed facts, I do not feel justified in granting the extraordinary remedy of a preliminary injunction. The decision of the questions at issue should be postponed until after the determination of the facts, under the opportunity afforded by examination and cross-examination of witnesses.

The motion for a preliminary injunction is denied.