STUYVESANT L. & B. CORPORATION, Plaintiff, *v.* HARRY REINER, as Treasurer of WAITERS UNION LOCAL No. 1, an Unincorporated Association of Seven or More Members, Defendant.

(Supreme Court, New York Special Term, February, 1920.)

Injunctions — when injunction restraining picketing will be granted — labor unions — restaurant keepers.

Where the employees of plaintiff, who keeps a restaurant, not only refused to strike at the call of the agent of the waiters union, after his demand upon plaintiff to unionize his shop, but joined in an affidavit that they did not wish to strike and were entirely satisfied with the wages and conditions under which they were working, an injunction to restrain the union from picketing in front of plaintiff's premises with its con-comitants of threats and intimidation of plaintiff's employees and annoyance to its customers, will be granted on the ground that such picketing is a malicious and unlawful act.

MOTION for an injunction.

Harry W. Newburger, for plaintiff.

Nathaniel Cohen, for defendant.

Supreme Court, February, 1920.  [Vol. 110.

GREENBAUM, J.  The plaintiff corporation conducts a restaurant, which was opened on May 1, 1919, and employs from twenty to thirty waiters and kitchen help.  There is no claim that the plaintiff had discriminated against the employment of persons belonging to a union.  These is no criticism made as to the wages paid to its employees, nor to hours of employment.  There is no claim that the conditions under which the business is conducted are unsanitary.  As a matter of fact, it is undisputed that the plaintiff spent about $30,000 in the early part of the year in decorating, renovating and furnishing the premises where the restaurant is carried on, and that they are attractive and in a sanitary condition.  The uncontradicted evidence is that sometime in October last an agent of the defendant union called upon one of the principal officers of the plaintiff, who had previously been a member of a labor union, for the purpose of inducing him to unionize the restaurant.  This the plaintiff refused to do.  The agent continued his efforts, and finally threatened a strike of plaintiff's employees if his demands were not complied with.  Subsequently he came to the restaurant and blew his whistle.  The employees, however, refused to strike.  In fact they have united in an affidavit that they do not wish to strike and that they are entirely satisfied with the wages and conditions under which they are working.  It is true that defendant now claims that the plaintiff discharged two of its employees because they belonged to a union, but the admitted fact is that when the agent first called upon the plaintiff demanding that it unionize its shop, the two employees who it is claimed were discharged had not been discharged or threatened with discharge.  Indeed, one of them, a woman, had only worked for plaintiff a few hours on the very day when the agent had declared that

he would order a strike, and the other, a man, was discharged about the same time. Following plaintiff's refusal to unionize, the defendant union instituted picketing in front of plaintiff's premises, with its concomitants of threats and intimidation of plaintiff's employees and of annoyance to its customers. It is to secure protection against these acts that injunctive relief is sought. We have thus a case in which all of the employees of plaintiff refuse to join the union and where the employer refuses to submit to a compulsory acquiescence in the defendant's demands to engage only employees who belong to a union. See *Reardon, Inc.,* v. *Caton,* 107 Misc. Rep. 541. It is a commonplace that labor organizations are lawful bodies, which may seek by lawful means to secure adequate compensation for their services, fair hours of labor, proper conditions under which to work, or to accomplish any other legitimate objects. The conduct of the defendants, however, is not only coercive upon the plaintiff, but also upon their employees. It is tantamount to saying to these employees, unless you join the union you will be deprived of your positions and prevented from securing work elsewhere. It is a direct interference with the exercise of their right of freedom of action in a matter in which they alone should decide. The right to join a union implies the right not to join one. To quote from *Curran* v. *Galen,* 152 N. Y. 33, 37: " Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling, and if the purpose of an organization or combination of workingmen be to hamper, or to restrict, that freedom, and, through contracts or arrangements with employers, to coerce other workingmen to become members of the organization and to come under its rules and conditions, under the penalty of the loss of their position, and of deprivation of

Supreme Court, February, 1920. [Vol. 110.

employment, then that purpose seems clearly unlawful and militates against the spirit of our government and the nature of our institutions. The effectuation of such a purpose would conflict with that principle of public policy which prohibits monopolies and exclusive privileges. It would tend to deprive the public of the services of men in useful employments and capacities. * * * Every citizen is deeply interested in the strict maintenance of the constitutional right freely to pursue a lawful avocation, under conditions equal as to all, and to enjoy the fruits of his labor, without the imposition of any conditions not required for the general welfare of the community. The candid mind should shrink from the results of the operation of the principle contended for here; for there would certainly be a compulsion, or a fettering, of the individual, glaringly at variance with that freedom in the pursuit of happiness, which is believed to be guaranteed to all by the provisions of the fundamental law of the state. The sympathies, or the fellow-feeling which, as a social principle, underlies the association of workingmen for their common benefit, are not consistent with a purpose to oppress the individual who prefers by single effort to gain his livelihood." The principles stated in *Curran* v. *Galen, supra,* have not been overruled. On the contrary, they have been expressly recognized in *Jacobs* v. *Cohen,* 183 N. Y. 210; *McCord* v. *Thompson-Starrett Co.,* 129 App. Div. 131; *National Protective Assn.* v. *Cumming,* 170 N. Y. 315, 334, 345. The *Curran* case has been cited with approval by both the Appellate Division and the Court of Appeals in the recent case of *Auburn Draying Co.* v. *Wardell,* 178 App. Div. 270; affd., 227 N. Y. 1. The *Curran* case was cited in *Straus* v. *American Publishers' Assn.,* 85 App. Div. 458, which held as illegal a combination to create a monopoly in

the sale of books in this state. These principles are fundamental to our theory of government and are broad and universal. Monopolies are abhorrent to American ideas of government. The law condemns all combinations, whether in respect of labor or of so-called capital which seek to tend to become monopolies and thus oppressive to the people. *Folsom* v. *Lewis,* 208 Mass. 336. A departure from these principles means a recognition of class preference under the law. The facts established in this action come peculiarly within the condemnation of law. The defendants had no grievance against plaintiff other than that it and its employees were not in accord with their views about unionizing the plaintiff's business. It is no answer to say that picketing has been held to be lawful, if peaceably conducted. But picketing, even though ostensibly peaceable, may not be employed when its purpose is in effect a malicious and wanton interference with another's business or vocation. *National Protective Assn.* v. *Cumming,* 170 N. Y. 321; *Bossert* v. *Dhuy,* 221 id. 342, 355. As a matter of fact there is no strike here at all. The picketing is therefore a malicious act and unlawful. Since no overt act of interference with the plaintiff's business is shown, other than that of picketing, the motion will be granted to the extent of forbidding any picketing in front of plaintiff's premises.

Ordered accordingly.