BRESCIA CONSTRUCTION COMPANY, Appellant, *v.* STONE MASONS CONTRACTORS' ASSOCIATION, by THOMAS KENNEDY, as President, and Others, Respondents.

First Department, March 4, 1921.

Monopolies and combinations — agreement between contractors' association and unions against public policy and tending to create monopoly and to throttle competition — right of contractor expelled from association to injunctive relief and damages — conspiracy against contractor in violation of Penal Law, section 580.

An agreement between an association of stone mason contractors and stone masons' unions, under which the unions agreed to work exclusively for members of the association, and to help enforce the latter's decrees against expelled members, and against any persons or firms engaged in the mason trade who were not members of the association, and under which the association agreed to employ only men who were members of the stone masons' unions, is illegal and against public policy and tends to create a monopoly and to throttle competition.

Hence, a corporation engaged in masonry construction which, although willing to employ union labor, has been compelled by the aforesaid association, unions and individuals connected with them, to abandon the performance of its contracts because its president had been expelled from the association for non-payment of dues, is entitled to an injunction and also damages.

The unions in acting as the tools or instrumentalities of the contractors' association for meeting out punishment to the corporation, although having no grievance of their own against it, thus also became wrongdoers.

648 Brescia Const. Co. v. Stone Masons Contractors' Assn.

First Department, March, 1921. [Vol. 195.

The acts of the association and unions were malicious, wanton interferences with the rights of the corporation, which contravened the provisions of section 580 of the Penal Law, which declares that " If two or more persons conspire: * * * 5. To prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, * * * Each of them is guilty of a misdemeanor."

APPEAL by the plaintiff, Brescia Construction Company, from a judgment of the Supreme Court dismissing the complaint on the merits, entered in the office of the clerk of the county of Bronx on the 17th day of April, 1920, upon the decision of the court rendered after a trial at the Bronx Special Term, and also, as stated in the notice of appeal, from the decision herein entered in the said clerk's office on the 31st day of March, 1920.

*Charles R. Bradbury,* for the appellant.

*Mortimer M. Menken* of counsel [*Menken Brothers,* attorneys], for the respondents.

GREENBAUM, J.:

The plaintiff is a corporation engaged in the business of masonry construction in the borough of The Bronx. The defendants may be described generally as follows: The Stone Masons Contractors' Association is an incorporated association composed of firms and individuals engaged as contractors in stone and mason work; the defendants Stone Masons' Union, Local No. 74, and Stone Masons' Union, Local No. 47, are unincorporated associations composed of workers in stone and brick masonry, and the other defendants are individuals who are connected with one or the other of the foregoing associations.

The gravamen of the complaint is that the Contractors' Association, in conjunction with the defendant labor unions and the individual defendants, confederated and conspired to prevent plaintiff from obtaining laborers and workmen in connection with the mason and stone work contracts upon which plaintiff was engaged, in pursuance of a plan agreed upon between them whereby they virtually secured a monopoly of the stone and brick masonry work in the borough of The Bronx.

The president of the plaintiff corporation is one Antonio

Brescia who, prior to September, 1919, had himself been a member of the defendant Stone Masons Contractors' Association. Differences arose between him and that association as to the amount of dues owing by him to the association, as a result of which he was expelled from its membership. The plaintiff corporation, which was practically owned by Brescia, was not a member of the Contractors' Association.

It is not disputed that on or about September 19, 1919, William L. Phelan, Inc., was engaged in the construction of buildings and contemplated the erection of a large number of houses in The Bronx, and that it contracted with plaintiff for the stone and mason foundation work in connection with the construction of a number of these buildings, for which plans had been filed. Brescia testified that about two weeks after he had put his men on this job the defendant Louis Mazzola, who is the president and business agent of the defendant Stone Masons' Union, Local No. 74, ordered the men who were employed by the plaintiff to quit work, which they did; that he thereafter made numerous efforts in The Bronx and in Brooklyn to secure other workmen and that on every occasion, after he had succeeded in getting some of them, they were again called off the plaintiff's job with the result that it was unable to proceed with the work of construction under its contracts with the Phelan Company and was compelled eventually to abandon them. The defendants did not deny that they were responsible for calling off the workmen on plaintiff's jobs. Mazzola frankly states in his testimony that his action was taken in pursuance of the instructions of the Contractors' Association. On his direct examination he testified as follows: " I said, ' Mr. Brescia, we were notified by the Stone Masons Contractors' Association that you are not in good standing. Will you kindly settle up your trouble before we take any action?' He says, ' All right. I will straighten out, Mr. Mazzola.' " He further testified that he subsequently met Brescia at Pythias Hall, which is located on One Hundred and Forty-ninth street near Walton avenue, the headquarters of the association, but that the matter was not straightened out; that he went to Brescia's job and told the men who were working there, " Boys, there is a violation of the agreement on that job. Now it is up to you." The

**650** Brescia Const. Co. *v.* Stone Masons Contractors' Assn.

First Department, March, 1921. [Vol. 195.

witness admitted that there was a shortage of stone masons in The Bronx and that about 300 members of his organization went to Brooklyn because the wages there were higher.

Mr. Phelan, the president of William L. Phelan, Inc., corroborated Brescia. He testified that he heard Mazzola tell Brescia on one of the jobs that " he could not work on the job, that he would not give him any men; he said that he was in bad," and thereafter the men left the job. He also testified that a number of the individual defendants, who were members of the Contractors' Association, endeavored to have him give them the contracts for doing the mason work in his building which had been awarded to plaintiff and that he refused.

The sole question here is whether the concerted acts of the Contractors' Association and the labor unions in depriving plaintiff of the workmen engaged by him in his masonry and stone setting work had legal sanction. Defendants' justification for their action in ordering off the men who were employed by the plaintiff seems to be that Brescia was no longer a member of the Contractors' Association. In support of this plea they rely upon a written agreement between the defendant association and Union No. 74, which will be presently considsidered. There is no claim that Brescia refused to employ union men. On the contrary, he testified that he was in favor of employing union men and that he was only too ready to use them.

The evidence of defendants was that the Contractors' Association and Labor Union No. 74 had co-operated under an agreement for many years. A copy of the latest of these agreements was introduced in evidence by the defendants. In view of the defense, a study of this agreement becomes necessary. It contains the following provisions: " *First*. Members of the Stone Mason Contractors' Association agree to employ none but members in good standing of Union No. 74 or members of any other subordinate union of the Bricklayers, Masons and Plasterers International Union of America and *vice versa*, members of Stone Masons' Union No. 74 agree to work for only members of the Stone Mason Contractors' Association and members of the Mason Builders' Association, it being expressly agreed, however, between all the parties to this agreement, that this exception permitting the members

of Union No. 74 to work for members of the Mason Builders' Association shall apply only when such member of the Mason Builders' Association is engaged as general contractor; but should members of the Mason Builders' Association engage themselves to do stone foundation work, or undertake mason work on a building as distinguished from general contracting, then in such event no stone mason from Union No. 74 shall work for such member of the Mason Builders' Association."

The " thirteenth " paragraph of the agreement reads as follows: " Members of the Stone Mason Union No. 74 or the members of any other subordinate union of the Bricklayers, Masons & Plasterers International Union, etc., if included herein or whom this agreement may effect (sic) agree not to, directly or indirectly, work for or under any contractor, builder, corporation or persons owing money to any member of the Stone Mason Contractors' Association, for work performed or materials furnished."

The other clauses pertinent to such an agreement refer to such matters as hours of labor, wages and arbitration.

The essential facts here appearing differ radically from those cases which have frequently arisen which involved the right of members of labor unions to refuse to work for those who do not employ union labor, or to pursue lawful means for inducing those who do not engage labor union men to do so, or to pursue lawful methods for securing betterment of conditions under which to work, including such matters as hours of work and wages. In the instant case we find that the defendant labor unions, in effect, entered into an alliance with the Contractors' Association under which the members of the union agreed to work exclusively for members of the Contractors' Association and to help it to enforce its decrees against expelled members or, for that matter, perhaps against any persons or firms engaged in the mason trade who were not members of the Contractors' Association. The defendant unions had no grievance against the plaintiff. The grievance was that of the Contractors' Association, which utilized the labor unions to enforce its mandates against other contractors who were not affiliated with it. It seems to us that the acts complained of by the plaintiff and established upon the trial peculiarly offend the principles of law expressed in the opinion

of the Court of Appeals in the case of *Curran* v. *Galen* (152 N. Y. 33). In that case the plaintiff was an engineer by trade, who complained that two of the individual defendants threatened him that unless he would join the Brewery Workingmen's Local Assembly, 1796, Knights of Labor organization, and pay the initiation fee and subject himself to its rules and regulations, they and that association would obtain plaintiff's discharge from the employment in which he then was and would make it impossible for him to obtain any employment in the city of Rochester or elsewhere. In its opinion the court, after stating that an " organization, or the co-operation, of workingmen is not against any public policy " and that it has the " sanction of law when it is for such legitimate purposes as that of obtaining an advance in the rate of wages or compensation, or of maintaining such rate (Penal Code, sec. 170),"* proceeds as follows:

" But the social principle which justifies such organizations is departed from, when they are so extended in their operation as either to intend, or to accomplish, injury to others. Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling, and if the purpose of an organization or combination of workingmen be to hamper, or to restrict that freedom, and through contracts or arrangements with employers, to coerce other workingmen to become members of the organization and to come under its rules and conditions, under the penalty of the loss of their position, and of deprivation of employment, then that purpose seems clearly unlawful and militates against the spirit of our government and the nature of our institutions. The effectuation of such a purpose would conflict with that principle of public policy which prohibits monopolies and exclusive privileges. It would tend to deprive the public of the services of men in useful employments and capacities. It would, to use the language of Mr. Justice BARRETT in *People ex rel. Gill* v. *Smith* (5 N. Y. Cr. Rep. at p. 513), ' impoverish and crush a citizen for no reason connected in the slightest degree with the advancement of wages, or the maintenance of the rate.' Every citizen is deeply interested in the strict mainte-

---

* Now Penal Law, § 582.— [REP.

nance of the constitutional right freely to pursue a lawful avocation, under conditions equal as to all, and to enjoy the fruits of his labor, without the imposition of any conditions not required for the general welfare of the community.   The candid mind should shrink from the results of the operation of the principle contended for here; for there would certainly be a compulsion, or a fettering, of the individual, glaringly at variance with that freedom in the pursuit of happiness, which is believed to be guaranteed to all by the provisions of the fundamental law of the State.   The sympathies, or the fellow-feeling which, as a social principle, underlies the association of workingmen for their common benefit, are not consistent with a purpose to oppress the individual who prefers by single effort to gain his livelihood.   If organization of workingmen is in line with good government, it is because it is intended as a legitimate instrumentality to promote the common good of its members.   If it militates against the general public interest, if its powers are directed towards the repression of individual freedom, upon what principle shall it be justified?''

The correctness of the law as stated in the opinion just quoted has not been gainsaid in any subsequent case.   It is the law of this State.

What was said in the *Curran Case (supra)* about the rights of workingmen applies in principle with equal force to the rights of those engaged in business who employ workingmen. A person thus engaged has the same constitutional right as the defendants to pursue his lawful business without the willful molestation and the malicious interference of another.

Assuming that Brescia was justly expelled by the Contractors' Association from its membership, its jurisdiction over him ceased with his expulsion.   The difference between him and that association did not justify the means it adopted in depriving the plaintiff of its workmen and driving it out of business.   It resorted to unlawful methods in punishing the plaintiff because its president may have offended the officers of the association or refused to comply with its mandates. The defendant Contractors' Association being without lawful warrant to destroy plaintiff's business, it follows that those who actually aided and abetted it in effectuating these illegal acts are equally culpable with it.

The defendant unions, in acting as the tools or instrumentalities of the Contractors' Association for meting out punishment to the plaintiff corporation, thus also became wrongdoers. As has been observed, the labor unions had no grievance of their own against the plaintiff and yet they carried out the behests of the Contractors' Association to ruin the lawful occupation of the plaintiff. The acts of the combined associations were malicious, wanton interferences with the rights of the plaintiff, which contravened the provisions of section 580 of the Penal Law, which declares that " If two or more persons conspire: * * * 5. To prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, * * * Each of them is guilty of a misdemeanor."

It seems to us clear that the provisions of the agreement between the defendants which obligated the members of the union to work exclusively for members of the Stone Masons Contractors' Association, with the unimportant exception therein mentioned, as well as that provision of the agreement which requires the members of the defendant unions not to do any work " for or under any contractor, builder, corporation or persons owing money to any member of the Stone Mason Contractors' Association, for work performed or materials furnished," are illegal and against public policy. The effect of such a contract is to force by intimidation, threats and coercive measures one who is unwilling to become a member of the Contractors' Association to join it or, upon his failing so to do, to deprive him of the labor which he may require and to interfere with his pursuit of his lawful vocation. And in case any debt is claimed to be due to any member of the Contractors' Association, the agreement contemplates that the labor unions will assist in collecting by arbitrary and oppressive measures claims thus asserted. In other words, instead of according alleged debtors the right to have their disputes determined by the legal tribunals established for that purpose, the defendant associations have constituted themselves the judges of the facts and the law and the agencies for enforcing their unauthorized decrees.

Another grave objection to the agreement is that it tends and is calculated to create a virtual monopoly of the stone

and mason foundation work in the borough of The Bronx. Under the agreement the Stone Masons Contractors' Association has it within its power to throttle competition; to fix prices at excessive rates against the welfare and interest of the community; to dictate terms and assume practical control of all the foundation masonry work in its district.

Defendants cite in support of their defense such cases as *National Protective Assn.* v. *Cumming* (170 N. Y. 315); *Jacobs* v. *Cohen* (183 id. 207); *Grassi Contracting Co.* v. *Bennett* (174 App. Div. 244) and cases which hold that an association of individuals may decide that its members are not to work for specified employers of labor. *State* v. *Van Pelt* (136 N. C. 633, 663) is a case which is typical of the class of cases in which members of labor unions have been upheld in putting on an "unfair" list those who were opposed to labor unions. There is no such issue here.

In the *National Protective Assn. Case* (*supra*) the court held, as the head note fairly summarizes it, that " a labor union may refuse to permit its members to work with fellow-servants who are members of a rival organization, may notify the employer to that effect and that a strike will be ordered unless such servants are discharged, where its action is based upon a proper motive, such as a purpose to secure only the employment of efficient and approved workmen, or to secure an exclusive preference of employment to its members on their own terms and conditions, provided that no force is employed and no unlawful act is committed."

In effect the court's opinion was that the giving of the reasons which animate the employee in refusing to work " does not affect his right to stop work nor does it give a cause of action to the workman to whom he objects because the employer sees fit to discharge the man objected to rather than lose the services of the objector."

It may be observed that the *National Protective Assn. Case* (*supra*) was decided by a vote of four to three, and that in the opinion of Judge GRAY, concurring with the majority, the rules as stated in *Curran* v. *Galen* (*supra*) were recognized to be sound, as indeed they were in the dissenting opinion.

*Jacobs* v. *Cohen* (*supra*) arose out of a contract between a firm of clothing manufacturers and a union called the Pro-

656   Brescia Const. Co. *v.* Stone Masons Contractors' Assn.

First Department, March, 1921.          [Vol. 195.

tective Coat Tailors' Union, in which it was provided that the firm shall not employ any help other than those belonging to or who are members of that union. The question certified to the Court of Appeals was: " Is a contract made by an employer of labor, by which he binds himself to employ and to retain in his employ only members in good standing of a single labor union, consonant with public policy, and enforcible in the courts of justice in this State? " This question was answered in the affirmative by a divided court, Judge Vann writing a vigorous dissent. Slight reflection should convince one that that case differs widely in its facts from the instant case. Besides, in that case the parties operated under an agreement voluntarily entered into. Here the plaintiff was not a party to any agreement with any of the defendants. It may also be noted that the court in its opinion expressly recognized the salutary principles declared in *Curran* . v. *Galen* (*supra*) and differentiated (pp. 211, 212) the facts in the *Curran* case from those of the *Jacobs* case.

In the *Grassi Case* (*supra*) a strike was threatened by a labor union in alleged violation of its contract. The facts were that the plaintiff was a domestic corporation engaged in the construction of buildings for others, and at the time mentioned in the complaint it had a contract for plastering and cement work on a fourteen-story apartment house. It was obligated by its contract to employ only union labor recognized by the building trades. The controversy arose as to the alleged violation on the part of the plaintiff of one of the provisions of the contract which forbade any work being done " between the hours of 7 and 8 A. M., 12 M. and 1 P. M., and 12 M. and 6 P. M. on Saturdays." It was claimed by the union that, in violation of the agreement, two members of the union worked on a Saturday at one-ten P. M. The plaintiff was summoned to appear before a meeting of the executive board of the union to answer charges for violating the contract. An explanation was made by the treasurer of the plaintiff that the violation occurred without the knowledge or consent of the plaintiff. The defendant union, however, decided against the plaintiff and held that it was conducting its operations in an unfair manner, and as punishment it recommended to the union " that a foreman be placed on each and every

Brescia Const. Co. *v.* Stone Masons Contractors' Assn.  657

App. Div.]        First Department, March, 1921.

job which Grassi Contracting Co. does for one year and that the whole shop be cleaned out of the men who worked for them previous to this trouble."

That case dealt with a contract between two parties, and not with a group of employers who wholly control the trade in a given locality or at least to a considerable extent, and the court nevertheless enjoined the defendant from carrying into effect its unwarranted mandate. In the course of its opinion the court said: "An employer may lawfully discharge or refuse to employ one because he is or is not a member of a labor union, and may lawfully contract with his employees to employ only union labor and to discharge others, or *vice versa; but it has been held that employers may not combine and agree to employ either only union or non-union labor when such employers control the trade in any community or control it to such an extent that it would be practically impossible for those thus discriminated against to obtain employment, for in such case the agreement would be oppressive and contrary to public policy.* [Italics ours.] (*McCord* v. *Thompson-Starrett Co.,* 129 App. Div. 130; affd., 198 N. Y. 587; *Farrelly* v. *Schaettler,* 143 App. Div. 273; affd., 207 N. Y. 644.) "

The italicised portion of the opinion from which we have just quoted applies directly to that part of the agreement between the defendant associations under which it was agreed that the contractors would employ only union men, and with equal force to that portion thereof which obligates the union men to work exclusively for the contractors.

The vice of the agreement lies in this, that it is calculated not only to be oppressive to non-union workmen, but also to contractors and builders who are not members of the Contractors' Association. The disagreement between the plaintiff's president and the Contractors' Association furnished no legal justification for its acts of oppression. The illegality of such an agreement is pointed out in *McCord* v. *Thompson-Starrett Co.* (129 App. Div. 130) and in *Beattie* v. *Callanan* (82 id. 7).

In the *McCord Case* (*supra*) Mr. Justice Scott, writing for the court, said: " I do not understand that there is any serious difference of opinion between us as to the illegality of the

directions to employ only members of one particular union. This seems to be established by the opinion of the Court of Appeals in *Curran* v. *Galen* (*supra*), reaffirmed and explained in *Jacobs* v. *Cohen* (*supra*). In the latter case Judge GRAY, writing for the court, makes it quite clear that while an individual employer may lawfully agree with a labor union to employ only its members, because such an agreement is not of an oppressive nature operating generally throughout the community ·to prevent craftsmen in the trade from obtaining employment and earning their livelihood, ·yet that such an agreement when participated in by all or by a large proportion of employers in any community becomes oppressive and contrary to public policy because it operates generally upon the craftsmen in the trade and imposes upon them as a penalty for refusing· to join the favored union, the practical impossibility of obtaining employment at their trade and thereby gaining a livelihood."

In *Beattie* v. *Callanan* (*supra*) Mr. Justice McLAUGHLIN (now judge of the Court of Appeals), writing for a unanimous court, held that the fact that a master painter refused formally to recognize a walking delegate of a union, conferred no right upon the union maliciously to cause parties who had entered into contracts with the master painter to break their contracts, under threats of causing a strike of all the workmen employed by these parties.

The judgment should, therefore, be reversed, with costs, and judgment rendered in favor of the plaintiff for the injunctive relief demanded in the complaint, and if a judgment for damages as prayed for be desired, a reference will be ordered to compute the same, with costs. Settle order on notice, reversing findings inconsistent with this decision and containing new findings.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of plaintiff for the injunctive relief demanded in the complaint, and if a judgment for damages as prayed for be desired, a reference will be ordered, with costs. Settle order on notice.