UNITED TRACTION COMPANY, Plaintiff, *v.* JOSEPH S. DROOGAN, Individually and as President of Division 148 of the Amalgamated Association of Street and Electric Railway Employes of America; JAMES H. PRIOR, Individually and as Treasurer of Division 148 of the Amalgamated Association of Street and Electric Railway Employes of America; JOSEPH F. McLOUGHLIN, Individually and as President of Division 132 of the Amalgamated Association of Street and Electric Railway Employes of America; JAMES HARRINGTON, Individually and as Treasurer of Division 132 of the Amalgamated Association of Street and Electric Railway Employes of America; CHARLES ERDT, WILLIAM HIENEY, WILLIAM MURRAY, MAURICE FLINN, JAMES HINES, PATRICK McKEON, THOMAS SIVERS, ABRAHAM KAISER, JOHN DELANEY, MATTHEW BURKE and ARTHUR MARTIN, Defendants.*

(Supreme Court, Albany Special Term, March, 1921.)

*Injunction (temporary)— continuation of — strikes — organizations engaged in strikes responsible for all lawlessness growing out of strikes which they could have avoided by reasonable discipline imposed upon their members — an injunction will not be vacated upon affidavits where the acts enjoined are illegal and tend to a breach of the public peace, although the alleged facts upon which the injunction is based are substantially denied by the opposing affidavits.*

MOTION to continue a temporary injunction.

---

* Published by request.—REPR.

Austin, McLanahan & Merritt (Walter Gordon Merritt and H. Preston Coursen, of counsel), for plaintiff.

John F. Murray & Wm. H. Murray (John F. Murray, of counsel), for defendants.

HINMAN, J. This is a motion to have continued during the pendency of this action the temporary injunction issued herein on March 23, 1921.

The "law of strikes" is so well settled in this state in relation to the acts herein sought to be enjoined that it is unnecessary to more than examine the case presented here to see whether the plaintiff has established a sufficiently strong *prima facie* case to bring it within the principles which the courts have applied in granting temporary injunctions.

After a careful examination of the law and of the facts presented by the papers before me, I find no reason for denying the continuance of the present injunction during the pendency of the action. The present injunction restrains only unlawful acts which the courts have thoroughly condemned in the conduct of a strike and this strike has been attended by such prolonged and notorious and general disorders of the character sought to be restrained that the necessity for the exercise of the restraining power of the court is plainly indicated.

The sole question is as to whether responsibility should attach to the defendants. This, however, became relatively unimportant, since this injunction restrains only that which is unlawful. It is not apparent therefore why its vacation or substantial modification would be of any benefit to the defendants. I am unwilling to believe that, in their desire to embarrass the plaintiff, the members of these unions, except perhaps a comparatively small percentage of them, desire to commit such acts as will subject themselves

43

to prosecution for violation of the criminal laws. It is a matter of common knowledge and popular significance that since the issuance of the present restraining order against the unions, and the other defendants, the lawlessness complained of has practically ceased. If such a result can be obtained out of respect for the authority of a court of equity seeking to preserve the rights of both parties by enforcing lawful conduct, it is much better, much kinder, more humane than to resort to the club of the policeman or the bayonet of the militia or to resort to criminal prosecution only after the commission of the offense and after the injury has been done.

It cannot be denied that the notorious conditions of lawlessness which had existed had been carried on to further the purpose of the unions and the strikers, whether committed by the strikers or by lawless strangers who gathered to look on, to sympathize and to aid. It was an incident of the strike which they were conducting.

Several newspaper clippings have been presented to me by counsel for the unions in an attempt to show that McLoughlin, president of the Troy Union, urged the members to refrain from lawless acts but the only one containing any date reveals a date subsequent to the time when this court undertook to exercise its powers in behalf of law and order. If they did not exercise their influence or power to correct the irregularities or disavow the acts until such action of the Supreme Court, when overt acts practically ceased, that, considered with what defendants did do, confirms the conclusion that the lawless acts were within the control of the defendants even if not done with their authority.

The courts hold that organizations engaged in strikes are responsible for all lawlessness growing out of strikes which they could have avoided by reasonable discipline imposed upon their members, by pub-

licly counselling that peaceful means alone be used, by protesting against and disavowing lawlessness, by taking such reasonable measures as may be at hand to assist in preventing or punishing it, and by doing all of these things unequivocally and in good faith. *Southern Railway Company* v. *Machinists Union,* 111 Fed. Repr. 49; *Union Pacific* v. *Ruef,* 120 id. 102; *Allis Chalmers Co.* v. *Iron Molders' Unions,* 150 id. 155; *Alaska Steamship Co.* v. *International · Longshoremen's Association,* 236 id. 964; *Kroger Co.* v. *Retail Clerks' Protective Association,* 250 id. 890.

But irrespective of what advice, if any, against lawlessness was given, unlawful acts were committed by members of the unions and by some of its officers according to the numerous affidavits submitted by the plaintiff. While the defendants have submitted affidavits denying or seeking to minimize the effect of the moving affidavits, the courts have held that an injunction will not be vacated upon affidavits where the acts enjoined are illegal and tend to a breach of the public peace, although the alleged facts upon which the injunction is based are substantially denied by the opposing affidavits. *Michaels* v. *Hillman,* 111 Misc. Rep. 284; *Davis* v. *Zimmerman,* 91 Hun, 489; *W. P. Davis Machine Co.* v. *Robinson,* 41 Misc. Rep. 329; *Foster* v. *Retail Clerks I. P. A.,* 39 id. 48; *Schlang* v. *Ladies Waist Makers Union,* 67 id. 221; *Pre Catelan, Inc.,* v. *International Federation,* 114 Misc. Rep. 662; *Skolny* v. *Hillman,* 114 id. 571.

I have no doubt whatever that the great majority of strikers involved here are worthy, well disposed, law abiding citizens, but unlawful acts of any of the members of either union were committed for the purpose of carrying out successfully the object of the union, that is, to secure a successful strike, and every member of the unions is responsible for the acts of the others and particularly for the acts of any officer.

In *Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S.

229, the Supreme Court of the United States said: " * * * when any number of persons associate themselves together in the prosecution of a common plan or enterprise, lawful or unlawful, from the very act of association there arises a kind of partnership, each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them." See also *Coon Co.* v. *Meinhart,* 112 Misc. Rep. 650.

The charges made against the defendant McLoughlin, president of the Troy Union, by O'Brien and those who corroborate him are particularly significant and serious. McLoughlin admits being present when O'Brien and his associates were almost killed by a mob while repairing a line in Troy on February eighth last. A different complexion is given to the incident by McLoughlin but the defense has failed to submit any affidavit of Ingram, the police officer who figured in the case. He could substantiate McLoughlin's assertions if they were true and the failure to secure his affidavit and present it here tends to discredit the theory of the defendants and to give credence to the story of O'Brien and his associates.

I could analyze the other conflicting affidavits but it would serve only to unnecessarily burden this opinion for the purpose of proving what has been amply demonstrated, namely, that the only acts to be enjoined are clearly unlawful acts and that the present restraining order, which has been such an efficacious remedy in the interest of peace and good order, should be continued *pendente lite.*

The defendants' attorneys raise a special objection as to the sufficiency of the complaint. Paragraph 13 of the complaint sufficiently alleges the liability of the unions and their members, however, and this question has recently been passed upon in *Skolny* v. *Hillman, supra,* where the authorities are collated.

An order may be entered continuing the present injunction during the pendency of the action, except as against William Hieney, William Murray and Maurice Flinn, who have been made defendants individually, but who have not been served with the moving papers, and as against Abraham Kaiser individually, who in an affidavit claims that he was tried on a charge of throwing a stone at a trolley car and was discharged by Police Justice Byron of Troy after a hearing on said charge. It is undenied that the said Kaiser is a former employee of the plaintiff. As a member of one of these unions even though he is not continued as a defendant herein individually the injunction continues to be binding upon him as well as against all other members of these unions.

The injunction continued hereby is as follows:

"That the defendants and each of them (except the defendants William Hieney, William Murray, Maurice Flinn and Abraham Kaiser individually) and their agents, servants, attorneys, confederates and any and all persons acting in aid of or in conjunction with them are and each of them is enjoined and restrained during the pendency of this action from illegally combining, agreeing or conspiring together in any manner to interfere with, injure or destroy plaintiff's good will, trade and business by unlawfully inducing or attempting to induce any person not to work for or patronize plaintiff for the purpose of preventing or obstructing plaintiff in the operation of its street railways until such time as it will pay a confiscatory wage; by in any manner obstructing or unlawfully interfering with plaintiff in securing employes or patrons; by in any manner destroying or injuring plaintiff's cars, equipment or other property; by annoying, harassing, ridiculing, threatening, frightening or assaulting any person or persons for the purpose of inducing them to leave the employment of or not to seek employment with plaintiff, or for the pur-

pose of inducing them not to patronize plaintiff by becoming passengers on plaintiff's cars, or calling them vile or disagreeable names; by picketing, gathering or congregating in crowds or groups around plaintiff's cars on the public highways or at any other place for the purpose of assaulting, annoying, intimidating or interfering with the employes, prospective employes of the plaintiff, or any person or persons who desire to patronize plaintiff by becoming passengers on plaintiff's cars; by making any false, misleading or untrue statements to any person, firm or corporation for the purpose of preventing plaintiff from securing public patronage or employes, or by inflicting or threatening to inflict any detriment, disadvantage, inconvenience or annoyance of any kind to any person because of relation to or association with plaintiff.

"By attempting to do any of the aforesaid acts."

Ordered accordingly.