SAMUEL ALTMAN and Another, Appellants, v. BENJAMIN SCHLES-INGER, as General President, and ABRAHAM BAROFF, as General Secretary of the INTERNATIONAL LADIES' GARMENT WORKERS UNION, and Others, Respondents.

First Department, February 9, 1923.

Injunction — action to restrain certain unions and officers and members thereof from coercing plaintiffs' employees and advising them to leave their employment contrary to their agreements, etc.— temporary injunction should have been granted on facts set forth in complaint and affidavits — injunction should be granted against local unions and international union as well as individuals actually participating in unlawful acts, without prejudice to make injunction applicable to additional parties.

A temporary injunction should have been granted in this action, brought to obtain a permanent injunction restraining the International Ladies' Garment Workers Union, its officers and the officers and members of several local unions, and other defendants, from coercing plaintiffs' employees and inducing them to leave their employment contrary to their express agreements, and from creating or continuing a strike in plaintiffs' factory, and from picketing or instigating persons to picket plaintiffs' place of business, since the complaint and the moving affidavits show that it was the intention of some of the defendants, at least, to put the plaintiffs out of business; that plaintiffs' employees were intimidated, assaulted and prevented from continuing their employment, and that efforts were made to induce them to join the union contrary to their express

33

agreement not to do so, of which agreement some of the defendants, at least, had knowledge.

The active agent in charge of the interference with plaintiffs' business was a member or business agent of the Joint Board of the Dress and Waist Industry of Greater New York, which was composed of representatives of all local unions of the city of New York including the defendant unions, and said agent was at the time of the acts in question admittedly the business agent appointed by the joint board to take charge of the shops and factories in the district within which plaintiffs' place of business was located. Said local unions were affiliated with the international union whose principal office is in the city of New York and the labor combination thereby created was for the purpose of organizing the workers in the industry. Such facts seem to connect all the defendants with the acts complained of and warrant a temporary injunction against all of them, without prejudice to further proceedings by plaintiffs to bring in and make the injunction applicable to additional parties as they may be advised.

APPEAL by the plaintiffs, Samuel Altman and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of July, 1922, denying their motion for a temporary injunction.

*Wise & Seligsberg* [*Leon Lauterstein* of counsel], for the appellants.

*Morris Hillquit* of counsel, for the respondents.

CLARKE, P. J.:

The action is brought to obtain a permanent injunction restraining the International Ladies' Garment Workers Union, an unincorporated association, its officers and the officers and members of the several named local unions, and other defendants from coercing, threatening and intimidating plaintiffs' employees and inducing them to leave plaintiffs' employment, contrary to their express agreements with the plaintiffs; from creating or continuing a strike in plaintiffs' factory; from picketing or instigating persons to picket plaintiffs' place of business; and from harassing plaintiffs in the free dispatch of their business. The facts set forth in the complaint and the moving affidavits show a condition of affairs which clearly warranted the trial court in granting the temporary injunction asked. The circumstances which led up to the bringing of the action in question were most aggravating and the proofs show that it was the intention of some of the defendants, at least, to put the plaintiffs out of business. Plaintiffs are copartners and in February, 1922, were engaged in the business of manufacturing ladies' dresses at 192 East One Hundred and Twenty-fifth street, in the city of New York. This partnership succeeded a previous partnership which had been in existence for only a short period, and of which partnership the plaintiff Altman was a member. The factory was originally opened in 1919 and was a non-union

factory. At that time Altman had been approached by union delegates and requested from time to time to unionize the plant, but had refused. Such refusal was followed by picketing and assaults upon the employees of the company. Application was made to the Supreme Court for an injunction. This previous proceeding was terminated by a stipulation dated November 18, 1919, by and between the parties, including the defendant Schlesinger, as president of the International Ladies' Garment Workers Union, that said defendants would "refrain from interfering with the employees of the plaintiffs, from picketing the plaintiffs' place of business in any manner whatsoever, and from threatening, intimidating and coercing those who would go to and from the plaintiffs' place of business, and from instigating a strike among plaintiffs' employees, and from hampering, hindering or harassing in any other way the free dispatch of business by the plaintiffs, for a period of six months." It is quite evident that in the prior proceeding the defendants considered that they were responsible for the acts charged. This is clearly shown by the stipulation. The defendant Carmelo Iandoli, sued under the name of John Yondelow, was at the times mentioned in the complaint one of the business agents of the Joint Board of the Dress and Waist Industry of Greater New York. Such fact is admitted by Iandoli in his affidavit. It is claimed by the appellants and seems to be admitted by all the parties that the aforesaid board was constituted as a sort of managing body by the various unions and persons engaged in the dress and waist industry in New York city. It is claimed by the appellants that such board had the right to call strikes. It is admitted that Iandoli had charge of the shops and factories located in Harlem and The Bronx. His duties included the inducing of non-organized workers in his territory to become members of the union.

The affidavit of the plaintiff Samuel Altman sets forth facts which, if true, would amply justify the granting of a preliminary injunction restraining *pendente lite* the commission or continuance of the acts of which the plaintiffs complain. This affidavit is accompanied by exhibits showing the number of persons employed by the plaintiffs, and the agreements between the plaintiffs and their employees. There are submitted many affidavits by employees of the plaintiffs, confirming the statements made by Altman. It appears that on February 21, 1922, the plaintiffs employed twenty-four persons. None of these persons were members of the union. All had signed agreements to the effect that the shop would be conducted as an open shop, and that they would not join the union. With the exception of possibly three or four of such

employees all of them stood by the plaintiffs and signed a statement under date of March 14, 1922, setting forth that said employees did not belong to any union and wished to go back to work for the plaintiffs. The affidavit of Altman states that after the injunction had been granted in 1919, based upon the aforesaid stipulation covering the period of six months, the defendant Iandoli told the plaintiff that he and all of the unions and the members thereof would abide by the injunction, but that they would await their time and would " get " the plaintiff when the opportunity afforded. On February 20, 1922, the plaintiffs discharged two employees, Lena Crocco and Angelino Crocco, for incompetency. These two employees, evidently aggrieved, went to the defendant Iandoli and joined the union. Iandoli then seized upon this circumstance as a pretext for calling a strike in plaintiffs' factory. On the evening of February 21, 1922, the defendant Iandoli approached the plaintiffs' employees as they were leaving the factory and stated that he was a delegate and had called a strike of the employees of the plaintiffs. These employees told Iandoli that they were not members of the union and were not subject to strike orders. The plaintiff Altman came upon the scene and took Iandoli to task for the disturbance which was then occurring, and Altman swears that Iandoli then said: " I have been after you for three years, Altman, and now I have you. These two girls whom you discharged yesterday now belong to the union and because they do, the union now has the right to call a strike at your place and we have the right to picket your place and see that your other people do not work there. Either you must sign up with the union and force your girls to join the union or I will put you out of business." This threat was followed by a period of disorder. The plaintiffs' employees were beaten; Iandoli and other alleged picketers were arrested; several fines were imposed; all without abating the interference with the plaintiffs' business on the part of Iandoli and those under his supervision. It is claimed by the appellants that gangsters were employed who were notable picketers and were identified as such by a policeman who advised their arrest. Upon one occasion after leaving the Magistrates' Court, the plaintiff Altman and a company of his employees were beaten up and violently assaulted with sticks, accompanied by vile language and the calling of the plaintiff and his employees the vilest names. Several of the plaintiffs' employees were injured at this and at other times. Many of the plaintiffs' employees were compelled to stay at home from time to time, and telephoned to plaintiffs that they would like to come back to work if it was safe. During this whole period Iandoli was making threats and was clearly in charge of the situa-

tion.  One of the plaintiffs' employees was pregnant when injured, and the party injuring her was fined in the Magistrates' Court. Iandoli in his affidavit admits having been present at the plaintiffs' place of business when the first disturbance occurred, and admits that he was consulted by the discharged employees of the plaintiffs.  He, however, denies that the assaults were made in the manner claimed by the plaintiffs.  Such denials by a party directly charged with the commission of such acts have very little weight. (*Arnheim, Inc., v. Hillman,* 198 App. Div. 88.)  In the *Arnheim* case, Mr. Justice GREENBAUM, writing for this court, said: " It is true that those thus accused deny the commission of the specific acts with which they are charged and give versions of the alleged occurrences which if correct would indicate that the strikers were very gentle and considerate towards the plaintiff's employees. This is highly improbable.  The timidity which naturally might be expected on the part of employees of a firm against whom a strike is pending to make any affidavits hostile to defendants is an added circumstance for crediting the testimony of these witnesses as to specific lawless acts of which they assert they were the victims. On the other hand, it is a matter of common knowledge that one charged with the commission of a crime is not prone to admit his guilt."

The law is well settled that under the facts shown in the case at bar, the plaintiffs are entitled to temporary injunctive relief. (*Arnheim, Inc., v. Hillman, supra; Davis v. Zimmerman,* 91 Hun, 489; *United Traction Co. v. Droogan,* 115 Misc. Rep. 672; *Skolny v. Hillman,* 114 id. 571; affd., 198 App. Div. 941; *Stuyvesant L. & B. Corporation v. Reiner,* 110 Misc. Rep. 357; affd., 192 App. Div. 951; *American Foundries v. Tri-City Council,* 257 U. S. 184.)

In the last-mentioned case the opinion was written by Chief Justice TAFT, and referred to picketing of the plaintiff's place of business in the following terms: "All information tendered, all arguments advanced  and all persuasion used under such circumstances were intimidation.  They could not be otherwise.  It is idle to talk of peaceful communication in such a place and under such conditions.  *  *  *  When one or more assaults or disturbances ensued, they characterized the whole campaign, which became effective because of its intimidating character, in spite of the admonitions given by the leaders to their followers as to lawful methods to be pursued, however sincere."

The defendants, moreover, had no right or justification in endeavoring to compel the employees of the plaintiffs to violate their written contracts of employment.  It is quite evident that some of the defendants, at least, knew that the plaintiffs' employees had

agreed not to join the union. Such contracts formed a part of the employment contracts of such employees and were binding upon both parties. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88; *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229.)

It is quite evident from the proofs offered that ever since the plaintiffs opened their factory it has been the intention of Iandoli and those associated with him to break up the plaintiffs' business or else unionize their factory. The stipulation made by the parties in the former action and the injunction granted on the strength thereof, together with the subsequent acts of the parties, clearly disclose a common plan or scheme known to many, at least, of the defendants, to thus destroy the plaintiffs' business or unionize the factory. The acts complained of were part and parcel of the same scheme, and were for the purpose of accomplishing the ends sought by such defendants.

The facts thus disclosed were sufficient to bind the organization, of which the defendants were individual members and officers. (*Auburn Draying Co.* v. *Wardell*, 227 N. Y. 1; *Skolny* v *Hillman, supra.*) As above noted, the so-called joint board, of which the defendant Iandoli and other defendants were members or agents, was composed of representatives from all the locals in the city of New York. The defendant unions have representatives on such joint board. The members of the locals sued in this action support the joint board by *per capita* payments. Iandoli was at the time admittedly the business agent appointed by such representatives of the locals to take charge of the shops and factories in the districts aforesaid. The defendants admit that as such agent he had charge of all negotiations and disputes between workers and employers in his territory, which territory included the establishment of the plaintiffs. The defendants do not claim that the joint board is not affiliated with the International Ladies' Garment Workers Union, having its principal office in the city of New York, and of which the defendant Schlesinger is president. In Schlesinger's affidavit it is stated that such International Union receives *per capita* dues from the affiliated locals and deals with all the matters of known general interest to the local unions affiliated with it, and that it aids such local unions in their negotiations with their respective employers and adjusts differences and aids in securing collective agreements between employers and workers.

It is also claimed by the defendants that such labor combination is created for the purpose of organizing the workers in the industry. Iandoli admits and asserts that his sole motive in his dealings with the plaintiffs and their employees was to induce them to join the union or to carry out the main objects of the union. Such facts

seem to connect the defendants with the acts complained of, and to warrant the injunction against all of them. If, in fact, there are any such defendants who were not engaged in the unlawful practices complained of, certainly no harm can be done, and such defendants would suffer no injury from said restraining order.

The learned and experienced counsel who appeared for the respondents, while personally deprecating the individual acts of violence and disorder complained of, stated frankly upon the argument, as in justification and by way of confession and avoidance, " It is idle to mince matters — these industrial disputes are war." We are aware of the maxim *Inter arma silent leges;* we also recall the historic statement attributed to General Sherman; but we are unwilling to admit the applicability of the maxim. The courts are open. The law has not been suspended. The right to peacefully pursue one's lawful calling lies at the base of ordered liberty, is within constitutional protection. Analogies are unsafe. In war the killing of the enemy and the destruction of his material resources is not only allowable but necessary. Such things have been done in industrial contests; but the courts, created to uphold and enforce the law, can neither condone nor tolerate such conduct. It is attempted to destroy this small concern, to drive it out of business by force and violence. It is entitled to the protection of the law.

An injunction *pendente lite* should be granted against the defendants Benjamin Schlesinger, as general president, and Abraham Baroff, as general secretary of the International Ladies' Garment Workers Union, and against the defendants Carmelo Iandoli, Jacob Halpern, Israel Horwitz, Lena Crocco and Angelino Crocco, as asked for by the plaintiffs. The plaintiffs also ask that the order be granted without prejudice to further proceedings by the plaintiffs to bring in and make the injunction applicable to additional parties as they may be advised, and I see no harm in granting such request.

It, therefore, follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and an injunction *pendente lite* granted as above indicated, with ten dollars costs.

DOWLING, SMITH, PAGE and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.