AMERICAN FUR MANUFACTURERS ASSOCIATION, INC., and Others, Plaintiffs, *v.* ASSOCIATED FUR COAT & TRIMMING MANUFACTURERS, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, November 30, 1936.

*Miller & Klein,* for the plaintiffs.

*Louis B. Boudin,* for the defendants Begoon and Gold.

*Sidney Elliott Cohn,* for the defendants Brownstein, Bernstein and Kochinsky.

*Markewich & Null [Samuel Null* and *Arthur K. Garfinkel* of counsel], for the defendant Pietro Lucchi.

*Edward Fillmore [Joseph H. Kutner* of counsel], for the defendant Associated Fur Coat & Trimming Manufacturers, Inc.

ROSENMAN, J.   This is a motion for an injunction *pendente lite.* One of the plaintiffs, American Fur Manufacturers Association, Inc. (hereinafter called " plaintiff association "), and one of the defendants, Associated Fur Coat & Trimming Manufacturers, Inc. (hereinafter called " defendant association "), are both membership corporations formed for the usual purposes of trade associations — collecting and dispensing credit information to their members; giving them information with respect to legislation affecting the fur industry; aiding in the settlement of disputes, etc.

The plaintiffs, other than the plaintiff association, are persons engaged in the manufacturing of fur garments.   The defendants, other than the defendant association, are labor unions (which, it is alleged, controlled approximately ninety-eight per cent of the fur workers in the metropolitan area of New York city), their officers and business agents.

The defendant unions and the defendant association entered into a written agreement with each other in the form generally known as a collective bargaining agreement.   It provided, among other things, machinery for settling by arbitration disputes arising between the member employees and the member employers, thus eliminating strikes and lockouts.   It contained a further provision, which has given rise to the chief dispute in this litigation, that " there shall be but one collective labor agreement in the fur manufacturing industry in the Greater City of New York."

The complaint alleges that the defendant association and the defendant labor unions conspired, by means of this collective agreement, to give defendant association a monopoly in the trade association business in this industry.   The monopoly is alleged to have been effected by the refusal of the defendant labor unions to enter into a contract with the plaintiff association similar to that with the defendant association.   Allegation is made that the result has been to coerce the plaintiffs, other than the plaintiff association, and other manufacturers in the fur industry to cancel their contracts of membership with the plaintiff association and to become members

of the defendant association; that the only alternative open to them is to enter into individual separate labor agreements with the unions, which would not give such manufacturers the benefits of arbitration and prevention of strikes which were enjoyed by the members of the defendant association.

The complaint then avers that all the defendants have, by reason of the foregoing, violated section 340 of the General Business Law (the Donnelly Anti-Trust Law) and that the plaintiff association and the other plaintiffs, as a result thereof, have suffered an irreparable injury.

That is the main contention of the complaint. There are others. It alleges that the plaintiffs, other than plaintiff association, have been threatened with physical injury by the defendant unions and that such defendants have committed acts of violence upon them in an attempt to interfere with and destroy their business.

Relief is requested that the contract between the defendant labor unions and the defendant association be declared void as against public policy and as in violation of section 340 of the General Business Law; and that the defendants be enjoined from continuing the alleged acts of violence.

The plaintiffs move for a temporary injunction and for a hearing under section 876-a of the Civil Practice Act. The defendants make cross-motions to dismiss the complaint for failure to state a cause of action as to each of them. The defendants also move that, if the complaint be held good as to those who have been charged with violence, the plaintiffs be compelled to serve separate amended complaints stating their respective causes of action in separate actions.

Section 340 of the General Business Law now reads as follows:

" § 340. Contracts or agreements for monopoly or in restraint of trade illegal and void. 1. Every contract, agreement, arrangement or combination whereby

" A monopoly in the manufacture, production, transportation, marketing or sale in this State of any article or product or service used in the conduct of trade, commerce or manufacture or of any article or commodity of common use is or may be created, established or maintained, or whereby

" Competition or the free exercise of any activity in this State in the manufacture, production, transportation, marketing or sale in this State or in the supply or price of any such article, product, commodity, service, transportation or trade practice is or may be restrained or prevented, or whereby

" For the purpose of creating, establishing, maintaining a monopoly or unlawfully interfering with the free exercise of any

activity within this State in the manufacture, production, transportation, marketing or sale of any such article, product, commodity or service, the free pursuit in this State of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void.

" 2. The provisions of this article shall not apply to cooperative associations, corporate or otherwise, of farmers, gardeners, or dairymen, including live stock farmers and fruit growers, nor to contracts, agreements or arrangements made by such associations, nor to *bona fide* labor unions.

" 3. The labor of human beings shall not be deemed or held to be a commodity or article of commerce as such terms are used in this section and nothing herein contained shall be deemed to prohibit or restrict the right of workingmen to combine in unions, organizations and associations, not organized for the purpose of profit."

The defendants contend that the plaintiff association cannot claim the benefit of section 340, because it is not engaged in the " manufacture, production, transportation, marketing or sale in this State of any article or product or service used in the conduct of trade, commerce or manufacture " as set forth in the statute; that even if such service were included in the statute there is no unreasonable restraint in restricting trade association service to a single association in one industry in one city; that there is no way in which the defendant unions may be compelled by court decree to enter into collective agreements with the plaintiff or any other trade associations in the fur industry; that there is no unreasonable restraint set forth in the complaint, because each of the plaintiffs other than the plaintiff association has the right to join the defendant association and obtain the preferential benefits of its collective agreement or refrain from joining the association and enter into its own individual labor agreement with the union; and finally that the contract complained of is expressly exempted from the operation of the statute by the provisions of subdivision 2 of the section, making the law inapplicable to labor unions.

It is not necessary, however, to pass upon all of these contentions because I have concluded that the collective agreement, attacked by this complaint, is cloaked with immunity by virtue of subdivision 2 of section 340, which exempts labor unions. If the contract be held legal as to the defendant labor unions, it must, likewise, be held valid as to the defendant association. The contract cannot be effective as to one signatory and ineffective as to the other. If a labor union is legally entitled to enter into the agreement here assailed, such privilege would be wholly illusory if the contract were to be held invalid as to the other contracting party.

Section 340 finds its beginning in chapter 383 of the Laws of 1897. It was re-enacted as section 1 of chapter 690 of the Laws of 1899, and again without change in chapter 25 of the Laws of 1909. Its purpose was to prevent combinations in restraint of trade intended to create monopolies and restrict competition. It was enacted originally as a codification of the common law. (*Matter of Davies*, 168 N. Y. 89, 101.)

The words " nor to *bona fide* labor unions " were added to subdivision 2 of the section by chapter 804 of the Laws of 1933.

Long before the enactment of any statutes concerning associations of workmen co-operating to better their conditions, however, the courts in this State had held them to be legal as to form and purpose. The only limitation imposed concerned the means used to accomplish their ends. (See " The Labor Injunction," by Frankfurter and Greene, p. 2 *et seq.*) Although earlier in American law there was judicial conflict concerning their status (Oakes, " Organized Labor and Industrial Conflicts," § 2), the legality of the existence of such labor unions at common law in this State was settled beyond doubt long before the enactment of subdivision 2 of section 340. (See *Curran* v. *Galen*, 152 N. Y. 33.) The test of illegality remained the same, viz., the means employed to accomplish their ends.

The combination and organization of workingmen for the legitimate purposes of co-operating for their general benefit were not affected by the passing of the statute in 1897. Such combinations were recognized as legal under the common law of this State prior to that time. (*Curran* v. *Galen, supra.*) They remained legal, of course, after that time.

However, since 1897 there developed other kinds of co-operative organizations which were not recognized by the common law and which consequently did not enjoy the immunity which protected the combinations of laborers at common law. Among these were co-operative groups of farmers, gardeners, live stock farmers, dairymen and fruit growers. Prior to the original act of 1897 these co-operative associations were practically unknown. The earliest one, for example, in the dairy trade, was organized in 1907 — ten years after the first enactment of section 340. (*Barns* v. *Dairymen's League Co-operative Assn., Inc.*, 220 App. Div. 624, 628, 629.)

Many adverse conditions in these occupations called for co-operative functioning and collective bargaining if improvement was to be had. But associations for such purposes were looked upon in the same light as any combination in restraint of trade, unlike combinations of workingmen, which had enjoyed common-law immunity from restraints for many years.

These associations became the subject of a legislative investigation, when the proposal arose to extend to them the immunities of the ordinary labor union. (See Report Wicks Legislative Investigation, 1917; Sen. Doc. 1917, No. 35.) As a result, the Legislature in its next session in 1918 (Chap. 655) provided statutory machinery for the organization of these agricultural co-operatives by adding article 13-A to the Membership Corporations Law (now article 4 of the Co-operative Corporations Law) and at the same time exempted them from the State anti-trust laws by inserting (Laws of 1918, chap. 490) the present subdivision 2 of section 340, except the words " nor to *bona fide* labor unions." (See 7 Cornell Law Quarterly, 293.)

By this amendment in 1918 the Legislature exempted a class of persons who otherwise would have come under the ban of section 340. It excluded not only the associations themselves but also their " contracts, agreements or arrangements." This type of legislation has been held to be a reasonable and not an arbitrary classification. (*International Harvester Co.* v. *Missouri*, 234 U. S. 199; *Barns* v. *Dairymen's League Co-operative Assn., Inc.*, 220 App. Div. 624, 637.)

In 1933 the section was again broadened by including the word " service " in the category of " article or product used in the conduct of trade " and by adding to the paragraph relating to exemptions the words " nor to *bona fide* labor unions." (Laws of 1933, chap. 804.) The final amendment was made in 1935, when the subdivisions of the section were numbered, and subdivision 3 added. (Laws of 1935, chap. 12.) The last addition was taken from section 6 of the Federal Clayton Act of 1914 (38 U. S. Stat. at Large, 731), also known as the Federal Anti-Trust Act of 1914.

The plaintiff association contends that the words " nor to *bona fide* labor unions," added to subdivision 2 by the amendment of 1933, do not apply to the " contracts, agreements or arrangements made by such " labor unions. It urges that the amendment of 1933 exempted only the organization and activities of a labor union, but did not exempt its contracts which might themselves be in restraint of trade.

The difficulty with such contention is that it was wholly unnecessary for the Legislature to enact a statutory exemption merely of the formation of labor unions themselves, since they had been exempt to that extent for many years under the common law of the State. No one could prosecute or enjoin a labor union in 1933 for legitimate and peaceful organization or activities. Why should the Legislature after thirty-six years of existence of section 340 insert a wholly unnecessary exemption, if that were the limit of the exemption intended?

Since its original enactment in 1897 the section had been broadened and enlarged several times. No reference was made to labor unions until the amendment of 1933. Prior to that year the Legislature had declared the exemption of contracts of agricultural associations from the operation of the statute, but had refrained from changing the existing law concerning labor unions. The common law was sufficient as to the organization of labor unions: no legislative act could have made the law more effective.

However, the time came in 1933 when the Legislature evidently decided to give labor unions the same preferential treatment which it had given to agricultural co-operatives in 1918 — to exempt not only the formation and activities of the unions but also their " contracts, agreements or arrangements." It did so in a logical manner by including labor unions with the farmers' co-operatives in the exemptions of subdivision 2 of section 340. Did the addition of the words " nor to *bona fide* labor unions " accomplish nothing? If it were meant to be only what was already clearly the common law, the legislation was unnecessary and futile. But it must be assumed that the Legislature intended their act to be an effective one.

The amendment of 1933 stated that " the provisions of this article shall not apply * * * to *bona fide* labor unions." That meant that all of the provisions of the article were to be inapplicable. Obviously the intention was to remove from labor unions all prohibitions which have their basis in restraint of trade. They were given the same preferential treatment as the other co-operative associations mentioned in subdivision 2. Whether such preferences are proper are not for the courts but for the Legislature to decide. They are reasonable classifications which it is not the judicial function to disturb.

*Brescia Construction Co.* v. *Stone Masons' Contractors' Assn.* (195 App. Div. 647), relied upon by the plaintiffs, was decided prior to the amendment of 1933 to the Donnelly Act.

The motion for a preliminary injunction and for a hearing under section 876-a of the Civil Practice Act is denied. The defendants' motions to dismiss the complaint are granted. Since different and separate acts of violence are alleged as to some of the defendants by some of the plaintiffs other than plaintiff association, each of the plaintiffs should start a separate action based thereon. Section 209 of the Civil Practice Act should not be made applicable to this situation where the evidence will be different as to each plaintiff. Settle order.