Shientag, J.
These are cross appeals from an order at Special Term which confirmed in part, and vacated in part, an award in arbitration rendered under the association-wide collective labor agreement in the fur manufacturing industry in New York.
The award directed the respondent employer to pay $150, plus the sum of $9,850 in liquidated damages, making a total of $10,000. Petitioner, the union, constituting the Furriers’ Joint Council of New York, appeals because the order below confirmed the award only to the extent of $150. Respondent, the employer, appeals because the award was not vacated in its entirety.
The award was based upon the respondent’s violation of the “ no contracting ” provisions of the collective labor agreement, provisions which the record indicates have been incorporated in that agreement and the renewals thereof for over twenty years. The award was unanimous, the representative of the employers’ association joining with the union representative and the impartial chairman in the industry.
The union represents the fur manufacturing workers in New •York City. Since 1912, it has had collective bargaining arrangements with Associated Fur Manufacturers, Inc., the employers’ association (hereafter called Associated) of which the respondent employer has been a member for many years. Associated, under the agreement, acts as the representative of its employer members, and the president of the respondent has been, at all material times, a member of the board of directors of Associated. Under the agreement, labor relations in the industry are governed by a tripartite conference committee composed of equal representatives of the union and of the association, and presided over by an impartial chairman selected by the parties. The conference committee administers the agreement. All grievances, disputes and claims are required to be investigated, mediated and adjusted under its auspices. This court has recently held, in substance, that the agreement involved is an enforcible agreement, binding on all of the members of the employers’ association as well as of the union, to arbitrate all matters in dispute (Matter of Mencher [Abeles & Kahn], 274 App. Div. 585). The agreement provides: “ The Conference Committee is the continuously functioning body dealing with the collective relations between the organized employers and the organized workers in the industry. Accordingly, all its previous rulings, regulations and interpretations of provisions of the agreement are carried over to the present agreement and shall form a part of the agreement except as such rulings, regu *559 Iations and interpretations arc modified by the present agreement or may be modified by future decisions of the Conference Committee.” (Collective Labor Agreement of Associated Fur Coat & Trimming Mfrs. Inc. with Furriers Joint Council, § XVI, subd. 5, p. 21.)
Since 1928 the collective bargaining agreement has contained provisions forbidding contracting as follows:
“3. No outside or inside contracting in any shape, manner or form shall be permitted.
“ 4. No finishing or lining contracting shall be permitted during the life of this agreement.” (§ XIV.)
The provisions have been implemented with the following enforcement provisions:
“1. The following shall be the liquidated damages and disciplinary measures to be imposed for violation of the provisions of this agreement: * * *
“ C. For contracting:
“ 1. First offense — maximum $150.00.
“ 2. Second offense — three (3) months’ suspension from the Association. * * *
“ 3. The Conference Committee shall have the right after due trial, to impose disciplinary measures for violations of any-provisions of this agreement not herein specifically provided for.” (§ 15, pp. 18-19.)
On May 8, 1941, the conference committee had adopted and promulgated written interpretations, or what are known as “ clarifications,” of the foregoing and other provisions as follows:
Clarifications
“ 1. Contracting
“ Change in the provision in clarification regarding system of contracting and restitution:
“ That an employer found guilty of substantial violation of the contracting provision shall pay the labor cost of the work done on the garment.
“ 2. Draftees
“ Draftees will be reinstated upon return.”
In matters pertaining to the “ enforcement ” provisions of the agreement, it was provided that “ the functions of the Conference Committee may be delegated to a Sub-committee to be composed of one or more members of the Conference Committee representing the Association, and one or more members of the *560 Conference Committee representing the Union, and the Impartial Chairman. The Sub-committee as thus constituted shall have the power to impose the Enforcement Provisions herein provided for to the same effect as if imposed by the Conference Committee.” (§ XVI, subd. 11.)
On or about March 30, 1949, respondent was charged with “contracting” contrary to the collective labor agreement between the association and the union.
The award contains a recital (presumably in summary form) of the proceedings that took place in connection with the charge made by the union against the respondent:
“ On July 13, 1949 the above matter came on to be heard before a Subcommittee of the Conference Committee functioning under the collective bargaining agreement, which subcommittee consisted of Mr. Kravits, member of the Conference Committee representing the Union, Mr. Chaikin, member of the Conference Committee representing the Association, and the undersigned, the Impartial Chairman.
“ The original complaint, dated March 30, 1949, charged the firm with giving out let-out muskrat coats, jackets and capes, to be made outside by contractors. The firm denied the giving out of contracting, but Joseph Ulman, acting as impartial chairman, found after a hearing that they did give out contracting as a result of which the matter was referred to the Subcommittee.
“ At the Subcommittee hearing, the firm, through the following who were present, Messrs. Martin Geller, William Boss and Milton Geller, continued to deny giving out contracting. There was presented to the Subcommittee evidence that the firm had paid bills amounting to $28,105 to one Patridas, amounting to $3,035 to one Stamos, amounting to $1,092.50 to one Tzikoras, amounting to $615 to one Mamiakis, and amounting to $7,480 to one Pappachristos, the total of all of these amounts being $40,067.50 [$40,327.50]. While the decision of Mr. Ulman found contracting in connection with the transaction with Patridas, the Association’s representative speaking in behalf of the firm and while denying any of the transactions constituted contracting, did agree that the Subcommittee could regard the transactions with the other firms enumerated above in the same category as the transactions with Patridas.
“ After hearing the arguments of the parties and after deliberation by the Subcommittee, in the course of which it became evident that the Union’s representative and the Asso *561 ciation’s representative could not agree, it was left to the undersigned Impartial Chairman to determine the matter and make an appropriate award.
“ Therefore, I award the penalty of $150.00 plus the sum of $9,850.00, making a total award of $10,000.
Dated, July 19,1949.
Louis M. Loeb Impartial Chairman ”
The record further indicates that both the union and the association representatives on the subcommittee of the conference committee “ adopted and joined ” in the foregoing award, and they, in addition to the impartial chairman, executed and acknowledged the same. At Special Term, on the motion to confirm this ward, the employer urged some nine objections thereto, which may be briefly summarized as follows:
1. The provisions against contracting were in violation of the Sherman and Clayton Anti-Trust Acts (§ 1 of the Act of July 2,1890, ch. 647; 26 U. S. Stat. 209, as amd.; U. S. Code, tit. 15, § 1 et seq.).
2. That such provisions were in violation of the Donnelly Act (General Business Law of Hew York, § 340 et seq.).
3. That the award was in violation of the Labor Management Relations Act of 1947, commonly referred to as the Taft-Hartley Act. (U. S. Code, tit. 29, § 141 et seq.)
4. That the arbitrators exceeded their powers in making an award of $10,000; that in no event could they, under the collective bargaining agreement, make an award in excess of $150.
5. The award was made by two different bodies, contrary to law and to the collective bargaining agreement.
6. That the award covered violations of the agreement with which the respondent was not originally charged.
7. That the award constituted the unlawful imposition of a penalty.
8. That payment of the awards to the conference committee was illegal under the law.
9. That the collective labor agreement does not provide for arbitration between a member of the association and of the union by reason of the breach of the provisions against contracting.
Special Term, on the motion to confirm, held that, having participated in the arbitration, the respondent cannot ‘ ‘ question the validity of the entire agreement under the Sherman or Donnelly Acts or the Taft-Hartley Act, nor the validity of *562 the provision concerning the method of application of the payment directed by the award (C. P. A., sec. 1458, [1]; Matter of Priore v. Schermerhorn, 237 N. Y. 16, 18). The only question open upon these motions is whether the arbitrators exceeded their powers (C. P. A., sec. 1462, [4]).”
We shall assume, for the purpose of this decision, that the legality of the provisions of a contract on the basis of which an award of arbitration is made (and this applies to a collective labor agreement as well as to any other contract) may be raised for the first time on a motion to confirm or to annul an award. (Matter of Gale v. Hitts, 176 Misc. 277 and cases there cited, revd. on other grounds 262 App. Div. 834; Matter of Western Union Tel. Co. [Amer. Communications Assn.], 274 App. Div. 754, affd. 299 N. Y. 177; Steers v. Lashley, 6 T. & R. 61, 101 Eng. Reprint 435 [1794]; Aubert v. Maze, 2 Bos. & Pul. 371, 126 Eng. Reprint 1333 [1801]; Maunsell v. Midland Great Western Ireland Ry. Co., 1 H & M 130, 71 Eng. Reprint 58; Joe Lee, Ltd., v. Lord Dalmeny [1927], 1 Ch. 300.) We shall therefore consider on this appeal not only the claim that the arbitrators exceeded their powers under the collective labor agreement but the additional claim that the provisions of the agreement which formed the basis of .the award were illegal and unenforcible.
We hold that the provisions of the agreement prohibiting contracting in any form were not in violation of any antitrust laws, National or State (American Fur Manufacturers Assn., 161 Misc. 246, affd. 251 App. Div. 708; see, also, Manhattan Storage & Warehouse Co. v. Movers & Warehousemen’s Assn., 262 App. Div. 332, revd. on procedural grounds, 289 N. Y. 82; Allen Bradley Co. v. Local Union No. 3, 325 U. S. 797).
On this appeal the employer does not appear to have pressed the objection raised below that these “ no contracting ” provisions were in violation of the Taft-Hartley Act. In any event, we find no such violation. The “ no contracting ” provisions, now assailed as contrary to public policy and as illegal and unenforcible, have been incorporated in the collective labor agreements in this industry since 1928 and have been enforced. They pertain to matters in which the union and its membership have a direct economic interest and are essentially for the benefit of the union and its members and for the maintenance and preservation of concededly desirable standards and working conditions in the industry.
Nor is the award unenforcible becausé payable to the conference committee. The members of that committee have not the slightest interest in these awards. No part of these payments *563 enures in any way to the benefit of any member of the committee. These payments, according to the record, and this is not disputed, “ are applied by the Committee to welfare, charitable, philanthropic and humanitarian purposes as the employer and union representatives of the Committee jointly agree.”
A closer question is presented by the objection which the court at Special Term below sustained, that in awarding any sum in excess of $150 the arbitrators exceeded their powers under the collective labor agreement. A majority of this court disagrees with that holding.
The ‘ ‘ clarification ’ ’ adopted by the conference committee on May 8, 1941, to which reference has been made, “ That an employer found guilty of substantial violation of the contracting provision shall pay the labor cost of the work done on the garment ” was, under the terms of the collective labor agreement, incorporated therein and made a part of that agreement (§ XVI, subd. 5). That is so although the clarificatiop. was not physically incorporated in the subsequent renewals of the collective labor agreement. This provision of section XVI clearly and expressly incorporates rulings, interpretations and clarifications which are not physically a part of the agreement. If they were physically a part of the agreement the provision would have been unnecessary. The second clarification of May 8, 1941, hereinbefore referred to, relating to the rights of draftees, was never physically incorporated into the agreement notwithstanding that it was particularly relevant to the 1941 and 1945 agreements which were thereafter executed. The record indicates that pursuant to that provision of the agreement the union and Associated, under their long period of operation under collective agreements, have developed a large body of interpretation and clarification which is binding in the industry and is known to all of the employers and members of the union. When such interpretations and clarifications are made by the conference committee they are publicized in bulletins issued to all of the employers and workers in the industry. The record shows that “ before either the industry or the union members of the Committee agree to any clarification or interpretation, the matter is submitted to their Boards of Directors, of which respondent’s officer was a member, and then to their respective memberships for ratification.” The record further shows that “ The interpretation and clarification of May 8, 1941 made by the Conference Committee is probably the most famous and well known of all such interpretations and clarifications. It has been continuously in effect since its promulgation. *564 * * * several hundred awards pursuant to that clarification and interpretation have been rendered, enforced and widely publicized in the industry.” As to all of the foregoing, there is no denial in the record. The award in its entirety, therefore, is supported by the provisions of subdivision 5 of section XVI, that all of the conference committee’s previous rulings, regulations and interpretations are carried over to the agreement and shall form a part of the agreement between the parties.
Moreover, the conference committee had the power to interpret the agreement with respect to the effect to be given to the May, 1941, clarification. By their agreement in this case, the parties vested in the conference committee the broadest power to determine every controversy between them having its genesis in the agreement. The conference committee is not an ad hoc body with powers derived from a specific, narrow submission of arbitration. The conference committee is “ the continuously functioning body dealing with the collective relations between the organized employers and the organized workers in the industry ” (§ XVI, subd. 5). It shall resolve “ any matter in controversy or dispute, between the Association and the Union or between any member of the Association and the Union ” (§ XVI, subd. 1). “ The Conference Committee shall devote its attention chiefly to the solution of problems and disputes affecting the entire industry and to the interpretations of the provisions of the Agreement ” (§ XVT, subd. 4). Its interpretation, therefore, that the clarification of May 1, 1941, is part of the agreement and enforcible as such, is one which, under the broad powers conferred upon it under the agreement, it had the power to make.
Even if the clarification may not be considered, as a matter of law, as part of the collective agreement itself, the award in its entirety is fully supported by the provisions of subdivision 3 of section XV of the agreement. Under that section, the conference committee has “ the right after due trial, to impose disciplinary measures for violations of any provisions of this agreement not herein specifically provided for.” The agreement specifically provides for the assessment of damages for a first offense in violating the provisions against contracting, and for a second offense it provides for three months’ suspension from the association. There is nothing in the agreement providing for repeated violations beyond a first or second offense. The conference committee, under the very terms of the agreement, was warranted in assessing, as damages, a sum approximating the labor cost for repeated substantial violations of the “ no *565 contracting ” provisions beyond a first or second offense. As the award itself indicates, it was urged that such labor cost amounted to upwards of $40,000. The arbitrators fixed the sum of $150, which is provided as the maximum to be allowed for a first offense, and the additional sum of $9,850 for the repeated subsequent violations. No claim was ever made that the violations against contracting, made the basis of the award, involved either a first or a second offense. On the contrary, the face of the award itself shows that the employer conceded many separate and distinct transactions which the arbitrators found to be substantial violations of the provisions against contracting.
The practical construction which the parties themselves place upon a contract is a most significant factor in connection with its judicial interpretation. Here, concededly, according to the record before us at any rate, the parties knew that the clarification of May 1, 1941, was treated as part of the collective agreement in the industry although not physically incorporated therein and has been repeatedly enforced as such. Indeed, in their protest before a congressional committee against the validity of the “ no contracting/’ provisions of the contract (part of which minutes is attached by the respondent), reference is frequently made to what are called the large fines and penalties imposed for violation of the alleged objectionable “ no contracting ” provisions.
“ It is a settled principle governing this subject, and which ought never to be lost sight of, that all reasonable intendments and presumptions are indulged in support of awards. ’ ’ (Fudickar v. Guardian Mut. Life Ins. Co., 62 N. Y. 392, 400, 401.)
In the light of all of the foregoing, therefore, there is no reason for refusing to give full force and effect to the award as made by the duly constituted arbitrators under the agreement. The award in its entirety should be confirmed. On petitioner’s (the union) appeal, the order below is modified and. the motion to confirm the award in full granted. On respondent’s (the employer) appeal, the order below is affirmed. One bill of costs will be allowed to the union. Settle order modifying judgment and order herein accordingly.